Terrence J. HARRISON,
Plaintiff-Appellant,

v.

CHRYSLER CORPORATION,
Defendant-Appellee.

No. 75–1970.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1977.

Decided June 28, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 8, 1977.

See also, D.C., 60 F.R.D. 9.

Preston T. Breunig, Indianapolis, Ind., for plaintiff-appellant.

Stephen E. Davis, Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD, Chief Judge, CAS-TLE, Senior Circuit Judge, and CUM-MINGS, Circuit Judge.

CASTLE, Senior Circuit Judge.

Defendant Chrysler Corporation discharged Terrence J. Harrison on December 5, 1966, on the ground that he had falsified a production count. Denying the alleged falsification, Harrison sought reinstatement and back pay by resorting to a grievance procedure established under the collective bargaining agreement between Chrysler and his Union.[1] At the conclusion of the grievance proceeding, Harrison was granted reinstatement but denied back pay. He thereafter brought this action under section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), claiming that he had been unfairly represented by the Union in the grievance proceeding. The district court granted summary judgment for Chrysler on the ground that Harrison had made no effort before bringing suit to remedy the Union's alleged unfair representation by resorting to certain intraunion appellate procedures. We reverse. The principal question addressed by the parties on appeal is whether failure to exhaust intraunion remedies may be raised by an employer as a defense to an employee's section 301(a) action. While we recognize that such failure may be a good defense under certain circumstances, we hold that the defense is not available to Chrysler here.

I.

Before his discharge, Harrison was assigned to the task of inspecting power steering units on an assembly line at Chrysler's electrical plant in Indianapolis, Indiana. Chrysler discharged Harrison because he reported that he had inspected 52 units on November 30, 1966, and Chrysler supervisors found only 26 units stamped that day with the letter "N". It is undisputed that Harrison used an inspection stamp embossed with "N" for at least part of the day

---

1. Plaintiff was a member of the bargaining unit represented by the International Union, United Automobile, Aerospace and Agricultural Imple-ment Workers of America and its Local Union No. 1226.

in question, but Harrison asserted and still maintains that he used two inspection stamps on that day.

The Union filed a grievance protesting Harrison's discharge on December 23, 1966. The grievance procedure contained four steps in which union representatives and management representatives, at increasing levels of responsibility, tried to resolve the employee's grievance. If the participants in the last step—the officers of the local union and the plant manager—were unable to dispose of the matter, the Union could refer the grievance to an Appeal Board which consisted of two or three union officials, two or three management executives, and an Impartial Chairman. The Appeal Board considered the grievance in two stages. The union and management representatives first tried to settle it. If they could not, the matter was resolved by a decision of the Impartial Chairman, acting as arbitrator. Under the collective bargaining agreement, a decision of the Appeal Board was final and binding on the employee, the Union and Chrysler.

According to a deposition of Felix D. Curtis, labor relations supervisor for Chrysler, Curtis met with Harrison and Beuford C. Holt, president of the local union, shortly after the grievance was filed. Curtis offered reinstatement to Harrison if he would admit that he had falsified the production count and would consent to a 30-day disciplinary layoff. Harrison rejected the offer. Holt privately told Curtis at that time that he did not think Harrison was telling the truth.

Harrison's grievance was processed through the four initial steps of the grievance procedure and referred finally to the Appeal Board. On July 10, 1969, the union and management representatives on the Board issued a written disposition of the grievance under which Harrison was granted reinstatement with full seniority but was denied back pay. Chrysler sent Harrison a message shortly after the decision directing him to return to work on July 31, 1969, but Harrison asserts that the message did not inform him of the Appeal Board's decision.

Harrison telephoned Chrysler, learned that he was being offered reinstatement without back pay, and declined the offer. Harrison states that he was first informed of the Board's decision in 1971 after he telephoned a representative of the Union to check into the progress of his grievance. The representative advised Harrison of the decision and told him that it was final. Harrison thereafter brought this action against Chrysler under section 301(a), asserting that the Union had unfairly represented him in the grievance proceeding.

■ Section 301(a), which provides for suits in district court for violations of collective bargaining agreements, permits suits by individual employees for wrongful discharge. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). However, the courts temper the exercise of their jurisdiction in such suits to give full play to procedures established in collective bargaining agreements for the settlement of employee grievances. This policy is mandated by the declaration of Congress that "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes . . .." 29 U.S.C. § 173(d). To effectuate that policy, the Supreme Court has held that a suit by an employee who has sidestepped the grievance machinery provided in a collective bargaining agreement must be dismissed by the district court. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The Court has also declared that, where an employee's grievance has been submitted to arbitration in accordance with a procedure chosen by the parties, the district court ordinarily may not review the merits of the arbitration award. *Hines v. Anchor Motor Freight, Inc., supra* at 563, 96 S.Ct. 1048.

■ This policy of noninterference with contractual grievance procedures, however, has limits. The adequacy of such procedures as a method of resolving employee grievances depends in essential part on the union's fair representation of the employee in his dispute with the employer.

The union breaches its duty of fair representation when its conduct toward the member is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A breach of that duty relieves the employee of any "express or implied requirement that disputes be settled through contractual procedures . . . ." *Hines v. Anchor Motor Freight, Inc., supra* at 567, 96 S.Ct. at 1058. Moreover, even if the grievance has been taken to arbitration, the union's breach removes any contractual finality of the arbitration decision "if it seriously undermines the integrity of the arbitral process." *Id.*

Under the express terms of the collective bargaining agreement, Harrison was bound by the final decision of the Appeal Board denying him back pay. He seeks to avoid that contractual bar to his present action by showing that the decision was tainted by unfair representation on the part of the Union. He bases his assertion of unfair representation on evidence of the following facts: (1) Holt's early statement to Curtis that he disbelieved Harrison; (2) the slow processing of his grievance, which resulted in a two-and-one-half year delay between the filing of the grievance and the Appeal Board decision; (3) the ultimate agreement of the Union's representatives on the Appeal Board not to take the grievance to arbitration but to grant Harrison the same relief he was offered shortly after the grievance was filed; and (4) the failure of the Union to notify him of the Appeal Board's decision.

Chrysler concedes that this evidence, taken by itself, creates an issue of fact on the question of whether the action of the Appeal Board's union representatives constituted or resulted from unfair representation by the Union. However, the defendant asserts that Harrison as a matter of law cannot establish the Union's unfair representation, because he never tried to remedy the alleged misconduct by resorting to certain intraunion appellate procedures established in the Union's constitution. Chrysler contends that, if Harrison had turned to these procedures, he might have obtained either one of two remedies that would have

obviated this suit. One of these was a reversal of the decision by the Appeal Board's union representatives to settle his grievance without granting back pay and a reopening of the grievance proceeding to consider that claim. The other, assuming the grievance proceeding could not be reopened, was a grant out of Union funds of an amount to cover Harrison's claim for back pay. Chrysler contends that Harrison's failure to seek these remedies from the Union precludes him from establishing that the Union breached its duty of fair representation.

Harrison contends that exhaustion of intraunion remedies is not an essential element of proving unfair representation, but that failure to exhaust such remedies is a defense that is available to a union, and only the union, because of its particular relationship to the employee. Moreover, Harrison asserts that the remedies that Chrysler claims were available to him were inadequate to satisfy his grievance against Chrysler.

## II.

We first turn to and reject Chrysler's argument that intraunion exhaustion is an essential element of proving unfair representation by the Union. The exhaustion requirement does not create an exception to traditional agency principles under which a union is held responsible for the authorized actions of its representatives. We have said that exhaustion of intraunion remedies is an "indispensable prerequisite" to the institution of a civil action against a union, where there is no question about the adequacy or mandatory nature of the remedies. *Newgent v. Modine Manufacturing Co.,* 495 F.2d 919, 927 (7th Cir. 1974). However, failure to exhaust such remedies is a defense available to the union because of considerations unrelated to the question of whether a wrong has been committed by it. *See Brady v. Trans World Airlines, Inc.,* 401 F.2d 87 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). The exhaustion requirement is based pri-

marily on a contractual obligation to exhaust internal union remedies, assumed by the member upon his joining the union and embodied in the union's constitution and regulations. *Orphan v. Furnco Construction Corp.*, 466 F.2d 795, 800–01 (7th Cir. 1972); *Neal v. System Board of Adjustment,* 348 F.2d 722 (8th Cir. 1965). It is also supported by a policy of avoiding

> judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own legitimate affairs.

*Brady v. Trans World Airlines, Inc., supra* at 104; *Local Union No. 657 of the United Brotherhood of Carpenters and Joiners of America v. Sidell,* 552 F.2d 1250, 1254 (7th Cir. 1977); *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 311 (6th Cir. 1975); *Imel v. Zohn Manufacturing Co.,* 481 F.2d 181, 183 (10th Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.W. 1411, 39 L.Ed.2d 469 (1974).

We next turn to Harrison's contention that this defense can be raised only by a union and not by an employer. We have recognized that an employer cannot, strictly speaking, raise the contractual defense available to the union, because it is not a party to the union's contract with the member. *Orphan v. Furnco Construction Corp., supra* at 800–01. It is also clear that the employer cannot assert the policy of avoiding judicial interference with internal union affairs to the extent that the policy serves only the interest of the union. Under the traditional rule, a litigant lacks standing to assert interests which are exclusively those of a third party. *See, e.g., Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). These and similar considerations have led certain other circuits to hold or state that an employer may not raise the intraunion exhaustion defense in an employee's action for breach of the collective bargaining agreement. *Petersen v. Rath Packing Co.,* 461 F.2d 312 (8th Cir. 1972); *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14,* 453 F.2d 1018, 1027 n.16 (9th Cir. 1972); *Cf. Brady v. Trans World Airlines, Inc., supra*

at 102–04. In *Petersen,* the Eighth Circuit held that an employer could not raise the intraunion exhaustion defense because no such exhaustion requirement appeared in the collective bargaining agreement. The court stated that "[t]he question of exhaustion of internal Union procedures is the Union's concern, not the Company's." 461 F.2d at 315.

We are not persuaded, however, that exhaustion of intraunion remedies is never a legitimate concern of the employer. In *Orphan v. Furnco Construction Corp., supra* at 801, we gave serious consideration to an employer's argument that permitting it to raise the defense would facilitate the national labor policy in favor of the private adjustment of grievances. That argument has some merit. Under certain circumstances an employee's appeal within the union, after a union official's bad faith refusal to press his grievance, might place the grievance procedure back on its proper course. A rule requiring such action would directly and substantially benefit the employer by enabling it to rely on the integrity of the grievance procedure in all cases in which it has not been irretrievably spoiled by the union's unfair representation.

The question presented is whether the employee owes an obligation to the employer to exhaust available methods of reviving a stalled grievance procedure before abandoning that procedure and resorting to the courts for relief. We believe such an obligation is implied under a collective bargaining agreement which, like the one in this case, reposes in the union exclusive authority to represent the employee in contractual claims against the employer and which provides grievance machinery as the exclusive method of resolving those claims. It is clear that such provisions may not preclude the employee from seeking judicial relief independently if the union irreversibly defaults on its obligation to represent him fairly. *Hines v. Anchor Motor Freight, Inc., supra* at 567, 96 S.Ct. 1048. However, no valid reason appears for relieving the employee from the operation of these provi-

sions, requiring his reliance on the union for representation and the grievance procedure for relief, so long as the procedure remains viable and fair representation can be obtained. Intraunion appellate procedures may be a method by which fair representation may be regained and the grievance procedure revived. The employer may properly assert that the employee has an obligation under the collective bargaining agreement to resort to intraunion appellate procedures for this limited purpose. To raise this defense, however, the employer must establish that an intraunion appeal could result in reversal of the union's refusal to press the grievance and that the grievance could be reinstated in accordance with the provisions of the collective bargaining agreement. *Orphan v. Furnco Construction Corp., supra* at 801. Moreover, even where such an opportunity exists, the employee may be relieved of the exhaustion requirement where resort to the intraunion appellate procedures would be futile. *Id.* at 802.

■ Having concluded that an employer may raise the intraunion exhaustion defense under limited circumstances, we turn to the question of whether the defense is available to Chrysler in this case. Chrysler asserts that Harrison could have sought by intraunion appeal a reversal of the decision not to take his grievance to arbitration and a reinstatement of the grievance proceeding to consider his claim for back pay. However, an examination of the collective bargaining agreement discloses that no such remedy was available to Harrison. The determination of the Appeal Board's union representatives to settle the grievance was manifested in a written decision of the Board which, under the express terms of the agreement, was final and binding on Harrison, the Union and Chrysler. The Union was therefore without power to reverse the determination of its representatives to settle the grievance. The suggestion by Chrysler's counsel that the Union could have requested Chrysler to reopen the grievance proceeding for a consideration of Harrison's claim for back pay is patently frivolous. There is no basis for assuming that Chrysler willingly would have exposed itself to the very liability that it resists in this action. Chrysler has thus failed to establish that Harrison could have revived the grievance procedure by intraunion appeal.

■ Chrysler contends that, even if the grievance proceeding could not be reopened, Harrison should have sought the back pay he was denied in that proceeding by turning to intraunion remedies before bringing this action. This argument is no more than a suggestion that Harrison should have asked the Union for a gift to cover Chrysler's liability for back pay. The Union is not liable for any part of the back pay for which Chrysler is potentially liable in this lawsuit. It is true that a union which breaches its duty of fair representation may be sued by an employee for lost pay attributable to the breach. *Vaca v. Sipes, supra.* That action, however, is essentially different from an action against the employer for wrongful discharge, even though certain elements of proof may be common to both. *NLRB v. Local 485, International Union of Electrical, Radio and Machine Workers,* 454 F.2d 17, 21 (2d Cir. 1972). In the action against the union, the breach of the duty of fair representation is the basis upon which damages are allowed. In the action against the employer, the union's breach merely removes an established grievance procedure as a valid basis for defense by the employer, and it exposes the employer to liability for damages arising out of the wrongful discharge. Thus, damages recoverable from the union and those recoverable from employer, when the union and the employer are joined as defendants, are distinct and attributable to the separate fault of each. *Vaca v. Sipes, supra* at 197–98, 87 S.Ct. 903. Damages attributable solely to the employer's breach of contract are not chargeable to the union, and increases in damages caused by the union's improper handling of the grievance are not chargeable to the employer. *Id.* A claim against the Union therefore would not have eliminated Chrysler's potential liability to Harrison. Moreover, even if Chrysler and the Union were jointly and severally liable for Harrison's

lost pay, Harrison would owe no obligation to Chrysler to exhaust intraunion remedies to satisfy his claim. Any such obligation would be owed exclusively to the Union under the Union's constitution. And finally, the intraunion remedies which Chrysler has brought to our attention are appellate procedures, not procedures by which a member's claim for damages may be satisfied.

Chrysler has failed to establish that any private remedy was available to Harrison to satisfy his claim for back pay after the Appeal Board rendered its decision. Its defense on the basis of Harrison's failure to exhaust intraunion remedies cannot be sustained, and the district court's judgment must be reversed. Because issues of material fact remain on the questions of whether the Union breached its duty of fair representation and whether Chrysler wrongfully discharged Harrison, the case must be remanded for trial.

Reversed and Remanded.

FAIRCHILD, Chief Judge, concurring.

I agree with the general principle that the employer is able to assert the defense of "exhaustion" only regarding those grievance procedures which he bargained for and were included in the collective bargaining agreement.

Because it is clear that the facts of this case do not fit the situation suggested by the employer's argument discussed in *Orphan,* 466 F.2d at 801, and really dictum there as here, I prefer not to speculate as to whether there are any "limited circumstances" under which an employer might predicate a defense on the employee's failure to exhaust intraunion remedies.