**Clifford E. CLAYTON, Appellee,**

v.

**ITT GILFILLAN, etc., et al., Appellant.**

**Clifford E. CLAYTON, Appellant,**

v.

**ITT GILFILLAN, etc., et al., Appellee.**

**Nos. 77–2756, 77–2763.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1979.

Decided April 14, 1980.

Everett F. Meiners, Parker, Milliken, Clark & O'Hara, Los Angeles, Cal. (on brief), and Lawrence Rosenzweig, Los Angeles, Cal., argued, for appellants.

John T. McTernan (argued), Margolis, McTernan, Scope, Sacks & Epstein, Los Angeles, Cal., on brief, for appelles; Elizabeth Spector, Los Angeles, Cal., argued.

Before GOODWIN and KENNEDY, Circuit Judges, and TAYLOR *, District Judge.

GOODWIN, Circuit Judge:

█ Clayton, a discharged employee, appeals from a district court judgment dismissing his action against ITT-Gilfillan for wrongful discharge under section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and against his union for breach of its duty to represent him. We affirm the dismissal in favor of the union, but reverse the judgment in favor of the employer.[1]

For alleged misconduct not material here, ITT fired Clayton in February 1975. As a member of the United Auto Workers (UAW), Clayton was entitled under a collective bargaining agreement to seek reinstatement. He took the first step under the

contract, a formal request for reinstatement, but the company denied his request. Clayton's local union then filed a timely grievance, but again the company refused to reinstate him. The union representative next made timely demand under the terms of the collective bargaining agreement for arbitration of the grievance. For reasons not stated in the record, however, the union eventually withdrew the request for arbitration.

Clayton was notified of the local official's decision not to press for arbitration. Under Article 33 of the union constitution, a member who is not satisfied with the handling of his grievance may appeal to the local's delegate body or general membership meeting. Appeal from either group's decision may next be taken to the International Executive Board. The unsatisfied member may then appeal the Board's decision to the Constitutional Convention Appeals Committee, or in some cases to the Public Review Board (PRB) established in Article 32 of the union's constitution.

Article 33, section 12, of the union constitution requires any member who feels aggrieved by any action of the local to exhaust his constitutional remedy before appealing to a civil court or governmental agency for redress.

Clayton admits that he did not exhaust his union remedies. He did not appeal the union official's decision not to proceed to arbitration even to the first appellate level provided in Article 33. Instead, he brought this action in federal district court several months later.

Both the union and ITT asserted as affirmative defenses Clayton's failure to exhaust his union remedies under Fed.R.Civ.P. 42. The court found that (1) Clayton had failed to exhaust his remedies, (2) the remedies available to Clayton through the union appeals process were adequate to redress

* The Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

1. Defendant ITT also cross-appeals from the district court's refusal to strike plaintiff's prayer for attorney's fees, punitive damages and

damages for emotional distress. This was neither a final judgment under 28 U.S.C. § 1291 nor an interlocutory order appealable under 28 U.S.C. § 1292. It is therefore not reviewable at this time.

his grievance, and (3) exhaustion of internal remedies could not be excused as futile. As a matter of law, therefore, the district court held that Clayton could not maintain an action against either defendant.

### 1. The union's exhaustion defense.

■ The exhaustion of internal remedies as a condition of maintaining an action against the union is a matter of judicial discretion.[2] *Buzzard v. Local Lodge 1040*, 480 F.2d 35, 41 (9th Cir. 1973); *Keeffe Brothers v. Teamsters Local No. 592*, 562 F.2d 298, 302–03 (4th Cir. 1977) (citing cases). Relying principally on *Buzzard* and *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919 (7th Cir. 1974), the district court held that Clayton's failure to exhaust his union remedies as required by the union constitution prevented him from suing the union. We agree.

■ There is no question that Article 32, section 12, of the union constitution made exhaustion mandatory here. Exhaustion is excused only if the remedies available are inadequate or if resort to the internal procedures would be futile. *Buzzard v. Local Lodge 1040, supra*, 480 F.2d at 41; *Baldini v. Local No. 1095*, 581 F.2d 145, 149 (7th Cir. 1978).

Clayton contends that the internal appeals process was inadequate because the union could not reinstate him to his job. The union could "only" award him money for any wrong it had caused, he complains.

■ Many courts examining the same internal remedies as those provided to Clayton have found them fair and adequate. *See Baldini v. Local No. 1095*, 581 F.2d at

149 (citing cases). In *Baldini*, the Seventh Circuit upheld the UAW procedures against an objection identical to that raised by Clayton. The ability to award only money damages does not make the process inadequate; relief against the union in the civil action Clayton now brings would give him no more. A primary reason for requiring exhaustion is to forestall unnecessary interference with union affairs. *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 104 (3d Cir. 1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). It follows that exhaustion makes especially good sense when the courts can give no different relief than that provided by the union.

More important in this case is the aid that exhaustion would have furnished the courts in deciding Clayton's claim against the union.

"A primary reason for the existence of the exhaustion doctrine is that prior union action interpreting union rules and perhaps also further refining and defining the problem may well assist the court when it is later called upon to resolve the controversy." *Buzzard v. Local Lodge 1040*, 480 F.2d at 41.

The UAW's liability (if any) for breach of its duty of fair representation would depend on the reasons for the union's withdrawal of the arbitration request. There is little in the record to indicate why the local official changed his mind and withdrew the arbitration request. But the missing motive is precisely the sort of information that an appellate body within the union would have elicited, compiling a record that would greatly assist the court now.[3]

---

**2.** Some courts have found that the duty of a union to represent its members arises from tort or contract law, but we have held that the duty of fair representation is a matter of federal statute. *Price v. Southern Pacific Transportation Co.*, 586 F.2d 750, 753 (9th Cir. 1978); *see also Retana v. Apartment, Motel and Hotel Elevator Operators, Local No. 14*, 453 F.2d 1018, 1021–22 (9th Cir. 1972). Judicial discretion to require exhaustion derives from 29 U.S.C. § 411(a)(4), which says:

"No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any

administrative agency * * *: *Provided*, That any such member *may* be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *." (Emphasis added.)

**3.** The policies warranting a requirement of exhaustion of intraunion remedies in suits between union members and unions or union officers were succinctly described in Simpson &

■ For all these reasons, the district court acted well within its discretion when it dismissed Clayton's claim against the union for failure to exhaust. Clayton failed to give his union the opportunity to reverse itself. He cannot obtain by judgment now what he would not allow the union an opportunity to afford him under its constitution.

### 2. Claim against the employer.

■ We next consider whether, as the district court held, Clayton's failure to exhaust internal union remedies barred his action against his employer for wrongful discharge. This circuit has discussed the validity of the employer's asserted exhaustion defense in dictum, but it has never directly decided the issue.[4] We now find that if a claimant, by exhausting internal union remedies, could not obtain the same relief sought in a civil action against an employer, the employer may not raise the failure to exhaust internal remedies as a defense.

■ While exhaustion of union remedies is not a condition precedent to maintaining an action against an employer, the employer is protected to a substantial degree by the exclusivity of the collective bargaining agreement's arbitration remedy. Exhaustion of the remedies provided in the agreement is required prior to a breach-of-contract action when those remedies are exclusive. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967).[5] Remedies are presumed to be exclusive where, as here, the parties to the agreement do not expressly provide that the grievance and arbitration procedures are *not* the exclusive remedy. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657–58, 85 S.Ct. 614, 618–619, 13 L.Ed.2d 580 (1965).

■ The requirement of exhaustion of collective bargaining remedies may thus bar an employee's action against an employer. *Otero v. Electrical, Radio and Machine Workers*, 474 F.2d 3 (9th Cir. 1973). It is typically the employee's union, however, and not the employee himself that controls initiation of arbitration or other remedies. Therefore, an exception to the exhaustion doctrine is recognized. Where, as here, the union has sole power to invoke arbitration,

Berwick, *"Exhaustion and the Individual Employee,"* 51 Tex.L.Rev. 1179 (1973):
"Conservation of judicial resources was one policy underpinning the doctrine. Also, courts agreed that administrative filtration served to sharpen grievances for eventual judicial resolution, assisting judges faced with unfamiliar rules and practices. Moreover, requiring resort to internal private remedies was thought to stimulate unincorporated associations to establish honest, democratic grievance procedures. Finally, some courts feared that a contrary rule would encourage a flood of litigation, sapping the effectiveness of internal procedures." *Id.* at 1216–17.

4. In *Retana v. Apartment, Motel and Hotel Elevator Operators, Local No. 14*, 453 F.2d 1018 (9th Cir. 1972), the court explicitly stated that an employer could not raise the intraunion exhaustion defense, but this statement is included in a footnote which ITT properly characterizes as "dictum." *Id.* at 1027 n. 16. *See Winter v. Local No. 639, Int'l Brotherhood of Teamsters*, 569 F.2d 146, 150 n. 22 (D.C. Cir. 1977), and Simpson & Berwick, *supra*, note 3, at 1223 n. 212, (both referring to *Retana* footnote 16 as "dictum"). It should be noted, however, that *Retana* footnote 16 has been cited by other courts for the proposition that an employer

cannot raise the intra-union exhaustion defense. *See Fizer v. Safeway Stores*, 586 F.2d 182, 184 (10th Cir. 1978); *Harrison v. Chrysler Corp.*, 558 F.2d 1273, 1278 (7th Cir. 1977).

We also note that in *Keppard v. International Harvester Co.*, 581 F.2d 764 (9th Cir. 1978), our court affirmed the dismissal of an employee's claim against his union because he had failed to exhaust his intra-union remedies, but reached the merits of the employee's claim against his employer for back pay. There is no indication, however, that the company attempted to raise Keppard's failure to exhaust as a defense. The opinion does not refer to, much less reject, any reliance by the employer on an internal exhaustion defense.

5. Most of those parts of *Vaca v. Sipes* concerning employee section 301 actions for wrongful discharge are dicta. *See* 386 U.S. at 199–202, 87 S.Ct. at 921–923 (Fortas, J., concurring). The holding in *Vaca* concerned only the federal courts' jurisdiction of employee causes of action against a union for failure to represent. But we have indicated that we agree with *Vaca's* discussions relating to claims against an employer. *Margetta v. Pam Pam Corp.*, 501 F.2d 179, 180 (9th Cir. 1974).

the employee can obtain judicial relief for breach of the employment contract only if he first shows that the union wrongfully refused to seek arbitration. *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. at 914. *See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Beriault v. Local 40*, 501 F.2d 258 (9th Cir. 1974). To be wrongful, however, the failure must be "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916.

The instant case differs from *Vaca* and *Hines*, the leading cases in this area. The employee's failure to exhaust against the union was not an issue in those cases. In both, the discharged employee faced no exhaustion barrier to union liability for failure to represent him. Here, ITT contends that Clayton's failure to exhaust his intraunion remedies precluded a showing that the UAW's failure to prosecute his grievance was "wrongful," barring his action for wrongful discharge.

■ It is initially useful, in determining the applicability of an exhaustion defense in this context, to distinguish two types of exhaustion requirements and the policies underlying each. The first, discussed above, requires union members to pursue all remedies under a union's constitution and bylaws before bringing actions against the union. As noted, this exhaustion requirement prevents unnecessary judicial interference in union disputes and conserves judicial resources.

■ The second type of exhaustion requirement compels unions or individual employees to follow all grievance procedures under a collective bargaining agreement before resorting to judicial remedies against employers. Exhaustion under the collective bargaining agreement prevents parties to the agreement from "short-circuiting" an agreed upon grievance procedure by resort to the courts. This is consistent with the policy preference, declared in section 203 of the Taft-Hartley Act, that, if at all possible,

labor disputes should be resolved within the framework of procedures approved under collective bargaining, rather than in the courts. 29 U.S.C. § 173(d). This primary commitment to private dispute resolution has been emphasized in a series of landmark Supreme Court labor decisions. *See, e. g., Hines v. Anchor Motor Freight, Inc., supra; Vaca v. Sipes, supra; Republic Steel Corp. v. Maddox, supra.*

There are good reasons, then, for requiring union members to exhaust procedures under union constitutions or bylaws before bringing actions against unions and for compelling employees to fully pursue collective bargaining remedies before bringing judicial action against employers. But are there good reasons for transferring the intraunion exhaustion requirement from the *union member versus union* context to cases in which employees sue employers for wrongful discharge?

In support of this extension, ITT argues that if an employee does not exhaust internal union remedies, he or she is estopped from showing that the union acted "wrongfully," as is required by *Vaca* and *Hines.* The company claims that if Clayton had pursued his internal remedies after the union had declined to process his grievance, the UAW might have reversed itself and the *Vaca-Hines* union "wrongfulness" standard would not have been satisfied. This argument was most cogently described in *Brookins v. Chrysler Corp.*, 381 F.Supp. 563, 568–69 (E.D.Mich.1974):

"By exhausting his internal remedies the employee may be able to eliminate the very wrong of which he complains, not merely obtain a remedy therefor in another forum. If the union's wrongful refusal to continue the grievance were reversed without prejudice to his rights, the employee would no longer have a cause of action for breach of the duty of fair representation, and consequently would have *no right under Vaca* to sue his employer for breach of contract." 381 F.Supp. at 569.

We find this analysis persuasive. But it does not apply in instances when the employee, by exhausting intraunion remedies, would not "be able to eliminate the very wrong of which he [or she] complains." That is the case here.

■ The rationale for requiring a showing of "wrongful" conduct in the *Vaca-Hines* context, as noted, is to prevent the circumvention of collectively bargained grievance procedures. A party should be barred from seeking in court what might still be obtained through private contractual remedies. Allowing the employer to raise intraunion exhaustion as a defense, if exhaustion could have resulted in a claimant obtaining the same relief he or she seeks in a civil action, promotes private dispute resolution.[6] Accordingly, the employer's exhaustion defense is properly recognized in those circumstances.

If, however, an aggrieved party cannot obtain adequate relief through contractual or internal grievance procedures, the dispute resolution rationale is inapplicable. There is no reason, consistent with *Vaca, Hines, et al.*, to require exhaustion if, regardless of the outcome of a full grievance procedure, a claimant will be compelled to resort to judicial process.

■ Here, once the union withdrew its petition for a hearing on his grievance, Clayton lost any opportunity he might have had for reinstatement through the contractual grievance process. Even if Clayton had successfully appealed the withdrawal of the hearing request and the union had reversed itself and found that it should have processed his grievance, the union's public review board could do no more than award him damages for breach of its duty of fair representation. It could neither reinstate Clayton nor reinstate his petition and prosecute his grievance action. We conclude that Clayton's claim against ITT was not barred by failure to exhaust such insuffi-

---

**6.** The Seventh Circuit recognized and thoughtfully described the reasons for allowing the employers to raise a qualified intraunion exhaustion defense in *Harrison v. Chrysler Corp.*, 558 F.2d 1273 (7th Cir. 1977):

We are not persuaded, however, that exhaustion of intraunion remedies is never a legitimate concern of the employer. In *Orphan v. Furnco Construction Corp.*, [466 F.2d 795] *supra* at 801, we gave serious consideration to an employer's argument that permitting it to raise the defense would facilitate the national labor policy in favor of the private adjustment of grievances. That argument has some merit. Under certain circumstances an employee's appeal within the union, after a union official's bad faith refusal to press his grievance, might place the grievance procedure back on its proper course. A rule requiring such action would directly and substantially benefit the employer by enabling it to rely on the integrity of the grievance procedure in all cases in which it has not been irretrievably spoiled by the union's unfair representation.

"The question presented is whether the employee owes an obligation to the employer to exhaust available methods of reviving a stalled grievance procedure before abandoning that procedure and resorting to the courts for relief. We believe such an obligation is implied under a collective bargaining agreement which, like the one in this case, reposes in the union exclusive authority to represent the employee in contractual claims against the employer and which provides grievance machinery as the exclusive method of resolving those claims. It is clear that such provisions may not preclude the employee from seeking judicial relief independently if the union irreversibly defaults on its obligation to represent him fairly. *Hines v. Anchor. Motor Freight, Inc., supra* 424 U.S. at 567, 96 S.Ct. 1048. However, no valid reason appears for relieving the employee from the operation of these provisions, requiring his reliance on the union for representation and the grievance procedure for relief, so long as the procedure remains viable and fair representation can be obtained. Intraunion appellate procedures may be a method by which fair representation may be regained and the grievance procedure revived. The employer may properly assert that the employee has an obligation under the collective bargaining agreement to resort to intraunion appellate procedures for this limited purpose. To raise this defense, however, the employer must establish that an intraunion appeal could result in reversal of the union's refusal to press the grievance and that the grievance could be reinstated in accordance with the provisions of the collective bargaining agreement. *Orphan v. Furnco Construction Corp., supra* at 801. Moreover, even where such an opportunity exists, the employee may be relieved of the exhaustion requirement where resort to the intraunion appellate procedures would be futile. *Id.* at 802." *Id.* at 1278–79.

cient remedies. *See Winter v. Local 639, Int'l Brotherhood of Teamsters*, 569 F.2d 146, 150–51 (D.C.Cir.1977); *Harrison v. Chrysler Corp., supra. Accord, Margetta v. Pam Pam Corporation*, 501 F.2d 179, 180 (9th Cir. 1974); *Fruit & Vegetable Packers, Local 760 v. Morley*, 378 F.2d 738, 745 (9th Cir. 1967).

Conditioning the employer's use of the internal exhaustion defense on the adequacy of internal union remedies produces an anomaly. Where the employer raises the affirmative defense of failure to exhaust the contract's dispute resolution machinery, and where the employee has failed to exhaust internal union procedures, the employer will be required to defend the union's representation of its members. In an action from which the union has been dismissed, ITT, to prevail on its affirmative defense, must defend the UAW's good faith in declining to prosecute Clayton's grievance.

We are aware of the anomaly. But we have not been directed to any authority that would permit the employer to escape liability if the trier eventually finds that the employee did not receive the minimum representation his union owed him. On the contrary, the cases compel the result we reach.

In *Vaca*, the Supreme Court said that the union's wrongful refusal to process a grievance could not defeat the employee's right to judicial relief against the employer, even though "the employer in such a situation may have done nothing to prevent exhaus-

tion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement." 386 U.S. at 185, 87 S.Ct. at 914. This means that the protection afforded to an employer by the collective bargaining agreement is conditional on the union's discharge of its duty to represent an employee fairly. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 571, 96 S.Ct. at 1059. The Court recognized that this in turn means courts will have to pass on whether there has been a breach of the duty of fair representation in actions for breach of the employment contract. *Vaca v. Sipes*, 386 U.S. at 187, 87 S.Ct. at 915.[7] To hold here that Clayton has no cause of action against ITT because of his union's failure to proceed to arbitration would run counter to the basic principles of *Vaca* and *Hines*.

■ We must therefore remand this case. ITT will be liable only if (a) the union's withdrawal of its demand for arbitration was wrongful, as that term has been construed in *Vaca, Hines*, and other cases, and (b) Clayton's discharge was a breach of contract. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 570–71, 96 S.Ct. at 1059–60.[8]

We note also that, although the union will incur no liability because of Clayton's failure to exhaust internal remedies, the extent of the union's wrong (if any) can affect the relief granted against ITT.

"If a breach of duty by the union and a breach of contract by the employer are

---

**7.** The necessity of reviewing the union's activities in trying a claim against the employer was a main reason for Mr. Justice Black's dissent in *Vaca*. "Henceforth, in almost every § 301 breach-of-contract suit by an employee against an employer, the employee will have the additional burden of proving that the union acted arbitrarily or in bad faith." 386 U.S. at 210, 87 S.Ct. at 927.

**8.** The Sixth Circuit reaches the same conclusion in a similar situation. In *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978), a discharged employee brought an action against his union for breach of the duty of fair representation, against his former employer for wrongful discharge under section 301, and

against both for conspiracy. The conspiracy and unfair representation claims were barred by the statute of limitations. This left the section 301 claims against the employer. The court noted that the company could only be liable if the employee showed that the union had acted wrongfully under the test of *Hines* as a prerequisite to his section 301 claim. The company would therefore defend on the basis of union conduct when the statute of limitations guaranteed the nonappearance of the union as a party. But dismissal of the claims against the union was held irrelevant to the employee's ability to proceed against the employer. 580 F.2d at 218–19.

proven, the court must fashion an appropriate remedy. Presumably, in at least some cases, the union's breach of duty will have enhanced or contributed to the employee's injury. * * * The governing principle, then, is to apportion liability * * * according to the damage caused by the fault of each." *Vaca v. Sipes*, 386 U.S. at 187, 197, 87 S.Ct. at 915, 920.

*See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 572–73, 96 S.Ct. at 1060–61 (Stewart, J., concurring). Hampered as we are by the lack of information about why the union dropped its arbitration demand, we can offer no better advice to the district court on remand.

Reversed and remanded for trial on the claim against the employer only. The judgment dismissing the claim against the union is affirmed.

KENNEDY, Circuit Judge, concurring:

This circuit does appear to have endorsed, although not as a result of detailed analysis, the rule that "(f)ailure to exhaust internal union remedies (cannot) be urged by the employer as a defense in a suit by the employee for wrongful discharge," *Retana v. Apartment Elevator Operators Union*, 453 F.2d 1018, 1027 n. 16 (9th Cir. 1972); *Keppard v. International Harvester Co.*, 581 F.2d 764 (9th Cir. 1978). I have some reservations as to the wisdom of this rule, but I agree the court's disposition in this case accords with the prior case law, and I therefore concur.