Paul E. TINSLEY, Plaintiff–Appellant,

v.

UNITED PARCEL SERVICE, INC., and Highway Drivers, Dockmen, Spotters, Rampmen, Packing House and Allied Products Drivers and Helpers, Office Workers and Miscellaneous Employees, Local Union No. 710, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants–Appellees.

No. 79–2445.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1980.

Decided Dec. 12, 1980.

---

Frank E. Wallemann, St. Louis, for plaintiff-appellant.

Edwin H. Benn, Michael R. Flaherty, Chicago, Ill., for defendants-appellees.

Before PELL, BAUER and WOOD, Circuit Judges.

PELL, Circuit Judge.

The plaintiff–appellant, Paul Tinsley, challenges the district court's grant of summary judgment in favor of United Parcel Service (UPS) and Highway Drivers, Dockmen, Spotters, Rampmen, Packing House and Allied Products Drivers and Helpers, Office Workers and Miscellaneous Employees, Local 710, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union or Local 710). UPS discharged Tinsley from employment on October 20, 1977. Local 710 thereafter filed a grievance on the appellant's behalf pursuant to the terms of the collective bargaining agreement. The grievance proceeded without success to the UPS/Local 710 Joint Grievance Committee, the final step before arbitration. The Committee denied the grievance and advised Tinsley that he would not be reinstated. The Union declined to submit the grievance to binding arbitration.

Tinsley failed to invoke the Union's appeals process to contest the Union's failure to press his grievance to arbitration.[1] Instead, on August 4, 1978, the appellant instituted an action under § 301 of the Labor

---

1. Thereafter, and prior to the filing of the present suit, Tinsley filed charges pursuant to the National Labor Relations Act, contending essentially, as he does in the present litigation, that he was discharged because of his activity on behalf of a labor organization. The reason given by the UPS for the "just cause" discharge was Tinsley's repeated failures to follow supervisory instructions. By letter of December 6, 1977, the NLRB Regional Director concluded, "The investigation failed to establish that the Employer terminated you or in other respects discriminated against you because of protected Union concerted activities, rather than, as contended by the Employer, that you were discharged for repeated failure to follow supervisory instructions. . . . I am, therefore, refusing to issue complaint in this matter."

The merits of the justness of the discharge were not reached by the district court and are not before us.

Management Relations Act, 29 U.S.C. § 185, alleging that UPS had violated the collective bargaining agreement by discharging Tinsley without just cause, and that Local 710 had breached its duty of fair representation. The district court granted summary judgment for the Union "due to Plaintiff's failure to initiate and exhaust his internal union remedies." Some six months later, the court granted summary judgment for UPS on the basis of its motion "that the plaintiff's claim against the co-defendant union has been denied by this Court's allowance of the union's motion for summary judgment." This appeal followed.

## I.

■■■ Exhaustion of internal union remedies is an indispensable prerequisite to suit against a union where union remedies are both mandatory and adequate. *Baldini v. Local 1095*, 581 F.2d 145, 148 (7th Cir. 1978); *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919, 927 (7th Cir. 1974). Local 710's internal union remedies are both mandatory [2] and, by virtue of well-established, and controlling, authority are adequate. The internal appeals process offers injunctive relief [3] and monetary damages.[4] The fact

2. Article 22 of Local 710's Constitution and Bylaws provides:

No member or officer of this Local Union shall resort to any court, tribunal or agency outside this Local Union or the International Union unless and until he has exercised all his rights as a member, and all forms of relief and avenues of appeal as provided by the International Constitution or these By-Laws have been exhausted by him, unless otherwise provided by statute.

3. Article XIX, Section 9 of the International Brotherhood of Teamsters' (I.B.T. or International) Constitution states:

Decisions and penalties imposed upon individual members, officers, elected Business Agents, Local Unions, Joint Councils or other subordinate bodies found guilty of charges may consist of reprimands, fines, suspensions, expulsions, revocations, denial to hold any office permanently or for a fixed period, *or commands to do or perform, or refrain from doing or performing, specified acts.* (Emphasis added.)
The I.B.T. Constitution is binding on members of Local 710 pursuant to Article 19, Section 4 of the Local's Constitution and Bylaws.

that the Union's appeals procedure cannot provide job reinstatement [5] does not render the remedies inadequate because "relief against the *union* in a civil action could never produce reinstatement." *Baldini, supra*, 581 F.2d at 149 (emphasis in original). Numerous courts have found the identical Teamsters' remedies to be adequate in breach of fair representation cases where the union asserted the defense of nonexhaustion. *See, e. g., Winter v. Local 639*, 569 F.2d 146, 149 (D.C.Cir.1977); *Fabian v. Freight Drivers and Helpers Local No. 557*, 448 F.Supp. 835, 839 (D.Md.1978). Indeed, in its brief here, the Union cites a page and a half of cases supportive of the above proposition, substantially all of which, however, are district court cases, many of which are not in the Federal Supplement reporter.

The exhaustion requirement springs from the union member's previously noted contractual obligation to exhaust union remedies before resorting to legal redress. *Harrison v. Chrysler Corp.*, 558 F.2d 1273, 1278 (7th Cir. 1977); *Newgent v. Modine Manufacturing Co., supra*, 495 F.2d at 927–28; *Orphan v. Furnco Construction Corp.*, 466 F.2d 795, 800 (7th Cir. 1972). Exhaustion

4. The I.B.T. Constitution, Article XIX, Section 9, establishes that fines may be assessed against individuals or against the Union itself. The Union in its brief cites an unreported district court case taking the view that the provision for fines could have been used to make the plaintiff whole. We have some difficulty in envisioning that an International Union fine of local officers would not go into the coffers of the Union rather than to the victim. No doubt the possibility of fines if these were to occur with any regularity in the cases of failure to represent would produce a compulsion to see through any cases having reasonable merit. In any event, the Union also relies upon the "command" provisions quoted in note 3 as a source of "make whole" money. We don't know whether in practice this will occur, but like the fabled mountain, it is there.

5. At the grievance stage, Tinsley apparently sought reinstatement. In the present action, although including in his complaint the boilerplate "such other and further relief as may be appropriate," he specifically seeks only to recover monetary damages, both compensatory and punitive.

serves the further purpose of forestalling judicial interference into internal union matters pending a full attempt at resolution by the union itself. As this court noted in *Baldini v. Local 1095, supra,* 581 F.2d at 149:

> The point of the exhaustion requirement is that a union should have a right to attempt to satisfy disgruntled members, and a court should know just what the union did or did not do with respect to the complaint before trying to decide if fair representation really was denied and what relief would be just in the circumstances.

*See also Harrison v. Chrysler Corp., supra,* 558 F.2d at 1278.

■ Exhaustion is excused where resort to union remedies would be futile. The appellant argues that because the Union issued a voluntary withdrawal card to him, he was no longer a member, and therefore was unable to invoke the Union appeals process. This contention, however, falls short of the "clear and positive showing of futility" required to excuse a plaintiff from exhausting union remedies. *Winter v. Local 639, supra,* 569 F.2d at 149.

The Joint Committee denied Tinsley's grievance and reinstatement request shortly before or after the appellant had obtained his withdrawal card.[6] Tinsley never attempted to initiate a complaint under the Union appellate process. Instead, he asserts that because he was no longer a full Union member after the Joint Committee's decision was issued, he was by definition, excluded from bringing charges by Article XIX of the International's Constitution. That provision allows any "member" to file charges against another member, a suspended member, or an ex–member who has been issued a withdrawal card. Tinsley contends that the distinction drawn between "members" and ex–members who have been issued withdrawal cards justifies the inference that members who have withdrawn can never utilize the Union appeals process.

Even if Tinsley retained no accrued right of access to the appellate procedures by virtue of his full membership status at the time of his discharge and grievance processing,[7] he still has not shown that the Union appellate procedure is closed to ex–members possessing withdrawal cards. Tinsley's argument ignores the purpose served by withdrawal from Union membership. Voluntary withdrawal relieves an unemployed Union member from the burden of paying dues and avoids a subsequent initiation fee if the person later resumes active membership. It does not wholly extinguish all rights and duties of membership.[8] Because the Union is bound to issue a voluntary withdrawal card at an unemployed member's request,[9] acceptance of the appellant's argument would seriously undermine the exhaustion requirement. Any unemployed member who sought to bring a § 301 suit

---

**6.** The Joint Committee announced its decision on November 4, 1977. The exact date that the withdrawal card was issued is uncertain. The plaintiff asserts that it was issued sometime in November, 1977, possibly as early as November 2.

**7.** This case was heard by a magistrate pursuant to 28 U.S.C. § 636. The district court approved, and ruled in accordance with, the magistrate's proposed findings. The magistrate did not believe that Tinsley's current membership status was relevant. Rather, he reasoned that because Tinsley was a full member at the time of the events leading up to his discharge and the processing of his grievance, "a subsequent 'withdrawal from the contract' does not lessen one's rights and obligations which accrued at a time when the contract was fully in effect."

**8.** Article XVIII, Section 5(b) of the International Constitution provides in part:

> In any case where a Local Union is required to give a member an honorable withdrawal card … it may provide for the continuance of Local Union benefits to such member or former member under conditions which it may set forth, but such member or former member shall not be permitted to hold office or vote, and shall have only such right to participate in the meetings and the affairs of the Local Union as shall be uniformly permitted by the Local Union Executive Board.

**9.** Article XVIII, Section 5(a) of the International Constitution provides, in part, that "[w]hen a member becomes unemployed in the jurisdiction of the Local Union, he shall be issued an honorable withdrawal card upon his request."

could circumvent the exhaustion requirement at will by simply obtaining a voluntary withdrawal card.[10] Whether it would be rested on estoppel, bad faith, or public policy, we would have little trouble in rejecting such a circumvention.

## II.

▉ The circuits are split over whether or not the exhaustion defense is also available to the employer.[11] An exhaustion requirement in favor of an employer clearly is not mandated by contract as it is with respect to a union. *Harrison v. Chrysler Corp., supra,* 558 F.2d at 1278; *Orphan v. Furnco Construction Co., supra,* 466 F.2d at 800. Nor does the policy of nonintervention in union affairs implicate any interest of the employer. *Harrison v. Chrysler Corp., supra,* 558 F.2d at 1278.

This circuit has imposed a qualified exhaustion requirement, however, in suits against the employer in order to serve national labor policy favoring private resolution of employment disputes. In *Harrison v. Chrysler Corp., supra,* 558 F.2d at 1278, this court ruled that "such an obligation is implied under a collective bargaining agreement which . . . reposes in the union exclusive authority to represent the employee in contractual claims against the employer and which provides grievance machinery as the exclusive method of resolving those claims." [12]

Before an employer can prevail by using the exhaustion defense, *Harrison* requires that the defendant prove "that an intra-union appeal could result in reversal of the union's refusal to press the grievance and that the grievance could be reinstated in accordance with the provisions of the collective bargaining agreement." *Id.* at 1279. If the union's reversal of a prior wrongful decision could revive the employee's stalled grievance, then the union could informally rectify the very wrong of which the plaintiff complains—a breach of the duty of fair representation. If this occurred, the plaintiff would no longer be able to maintain a breach of contract suit against the employer under *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), because there would have been no breach of the duty of fair representation. Consequently, UPS cannot in this Circuit prevail in the instant case unless resort to the Union appeals process could have revived Tinsley's grievance.

The recent case of *Miller v. Gateway Transportation Co.,* 616 F.2d 272 (7th Cir. 1980), is dispositive. In *Miller,* this court was faced with the question of whether or not an employer can assert the defense of failure to exhaust the very internal union remedies at issue here: those of Teamsters Local 710. In *Miller,* as in the instant case, the Joint Committee had denied the plaintiff's grievance and refused reinstatement. This court recognized that decisions of the Joint Committee are final and binding according to the collective bargaining agreement.[13] The court analyzed the remedies

---

**10.** This case is unlike *Segarra v. Sea–Land Service, Inc.,* 581 F.2d 291 (1st Cir. 1978), where the court refused to apply the exhaustion defense in favor of the union because the plaintiff had been expelled from the union four years before the occurrence of the incidents at issue.

**11.** Some circuits without any particular analysis dismiss the employer as a party once the union is dismissed due to the plaintiff's failure to exhaust internal union remedies. *See, e. g., Willetts v. Ford Motor Co.,* 583 F.2d 852 (6th Cir. 1978); *Pawlak v. Local 764,* 444 F.Supp. 807 (M.D.Pa.1977), *aff'd,* 571 F.2d 572 (3d Cir. 1978).

**12.** Article 23 of the collective bargaining agreement between UPS and Local 710 provides that only Union representatives may invoke griev-

ance procedures. This requirement is typical of most collective bargaining agreements. *Clayton v. ITT Gilfillan,* 623 F.2d 563, 567 (9th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980).

Resort to the contractual grievance procedure is presumed to be the exclusive remedy unless the parties to the collective bargaining contract have explicitly provided otherwise. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657–58, 85 S.Ct. 614, 618, 13 L.Ed.2d 580 (1965).

**13.** Article 23 of the collective bargaining agreement stipulates that "[i]n the event of a grievance on the part of any Employee, . . . a decision reached at any stage will be final and binding on both parties."

available and concluded that the finality of the Joint Committee's determination precluded reinstatement of the employee's claim. *Id.* at 275.

The rationale favoring union grievance procedure exhaustion in suits against employers is grounded upon the assumption that the private remedies available will afford the same relief which an employee could obtain judicially. *Clayton v. ITT Gilfillan,* 623 F.2d 563, 569 (9th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980). As *Miller* acknowledged, Local 710 itself is powerless to award Tinsley reinstatement. Moreover, this court has rejected as frivolous the defendant's contention that an employer might, at the union's request, gratuitously reopen grievance proceedings deemed "final and binding" pursuant to the collective bargaining contract to reconsider the reinstatement request and thereby expose itself to the very liability it is seeking to avoid in this action. *Miller v. Gateway Transportation Co., supra,* 616 F.2d at 275 n.5; *Harrison v. Chrysler Corp., supra,* 558 F.2d at 1279. *See also Baldini v. Local 1095, supra,* 581 F.2d at 150. In *Miller v. Gateway Transportation Co., supra,* 616 F.2d at 275 (footnotes omitted), this court reasoned that

> [t]he union remedies at issue provide for "trials" of union members, officers, local unions, and other subordinate bodies of the International. Such a trial may be initiated by a union member's complaint alleging a violation of the union constitution or bylaws and may result in "reprimands, fines, suspensions, expulsions, revocations" and other similar relief. That relief does not, of course, include the setting aside of an adverse decision rendered pursuant to the terms of a collective bargaining agreement by a union–employer grievance committee; neither does it include any other relief to which Miller may be entitled from Gateway.

Because the Union cannot reinstate Tinsley nor revive his grievance, the remedies are inadequate to bar suit against UPS. *See, e. g., Miller v. Gateway Transportation Co., supra,* 616 F.2d at 275; *Harrison v. Chrysler Corp., supra,* 558 F.2d at 1279 (union remedies are inadequate to bar suit against employer because they cannot provide back pay for which the defendant may be liable); *Clayton v. ITT Gilfillan, supra,* 623 F.2d at 569 (absence of reinstatement as remedy bars exhaustion defense as applied to employer).

Nonetheless, UPS contends that once the Union is dismissed as a party, the employer also should be dismissed because a court cannot properly determine the fair representation issue without the presence of the Union as a party.[14] UPS argues that reversing the summary judgment in its favor, but upholding Local 710's dismissal, would impose an unfair burden upon the employer because it alone would have to defend the Union's actions. The defendant urges that it may not be able to obtain Union officials as witnesses. Once the Union is dismissed as a party, it may no longer be interested in defending its prior actions, but might wish to assist the plaintiff in obtaining a judgment against UPS. Moreover, UPS contends, allowing suit against an employer in these circumstances will give plaintiffs an incentive to circumvent union remedies because they will know that the union will be eliminated as a party and the employer, forced to defend the action alone, will necessarily be less able than the union to vindicate the union's prior actions.

This circuit has not explicitly addressed the fundamental fairness argument to date. The Ninth Circuit, however, in *Clayton v. ITT Gilfillan, supra,* 623 F.2d at 570, has recognized that "[c]onditioning the employer's use of the internal exhaustion defense on the adequacy of internal union remedies produces an anomaly." The Court rea-

14. UPS argues that refusing to dismiss the employer as a party in these circumstances will not only hinder a just resolution of the claim against the employer, but also raises the prospect of potential conflicting decisions. A court may rule, for example, that the employer is liable because it finds that the union did breach its fair representation duty. Subsequently, the plaintiff may exhaust the union remedies available, and then commence a new lawsuit against the union in which it would be possible to find no breach of the duty of fair representation.

soned, nevertheless, that this result is mandated by the case law and by the very principles of *Vaca v. Sipes, supra*, in which the Supreme Court ruled that an employer could not escape a breach of contract suit if the union had wrongfully refused to process the employee's grievance even though the employer may have done nothing to prevent exhaustion of remedies. Judge Goodwin writing for the court in *Clayton* reasoned that precluding suit against the employer in cases where a plaintiff failed to exhaust all internal remedies would undermine *Vaca* and other cases that have conditioned insulation from suit (which the employer enjoys by virtue of the exclusivity of remedies stipulated in the collective bargaining agreement) on the union's discharge of its duty of fair representation. The court acknowledged that it was "aware of the anomaly. But we have not been directed to any authority that would permit the employer to escape liability if the trier eventually finds that the employee did not receive the minimum representation his union owed him. On the contrary, the cases compel the result we reach." *Id.* at 570.

In any event, the thrust of UPS's argument of unfairness focuses only on the potential difficulties of the company, unaided by a union which no longer has the interest of a co-defendant, in showing that the union did provide the minimum representation it owed the employee. Even if this cannot be demonstrated, there is no automatic liability on the company. The plaintiff must still demonstrate that the company breached the contract when it discharged him, *i. e.,* that his discharge was without just cause. Even as to the first prong, before there could be liability, the plaintiff, having brought the action, would have the burden of proving the lack of adequate representation by the union as a part of his case. *Vaca v. Sipes, supra,* 386 U.S. at 186, 87 S.Ct. at 914.

Having concluded under the case law of this Circuit that the judgment in favor of the Union must be affirmed and the judgment against UPS must be reversed, we also express the thought that amendatory legislation might be appropriate in the present type of situation, which the number of cases filed indicates is not infrequent. While the particular Union has appellate procedures to which an employee must resort before it can be said that he has exhausted his internal union remedies, these, on any fair analysis, are collateral to the dispute in question, undoubtedly would require substantial periods of time for pursuit, and, in all probability, would not be successful as they are before an internal and possibly non–objective forum. Disputes such as this should be, for the most part, resolved expeditiously at the site of the occurrence. On the other hand, because the exclusive bargaining agent of the employee has chosen not to proceed to take all direct steps to resolve this issue, a fairness argument would permit the employer to rely upon the discontinuance. This reliance, of course, could not be justified if collusion existed between the company and the union.

For the reasons stated herein, the judgment of the district court is affirmed as to the Union and reversed as to UPS.[15] Plaintiff will recover one–half of his costs against UPS and bear the remainder. The Union will recover its costs against the plaintiff.

---

**15.** We are not unmindful that subsequent to oral argument, and while this opinion was in the process of preparation, the Supreme Court granted certiorari in *Clayton v. ITT Gilfillan.* As noted in the foregoing opinion, a conflict among the circuits does exist, a basis for the grant of certiorari. While we remain sympathetic to the position of UPS, we decline to defer our decision in the present appeal, being of the opinion that the result we have reached is the correct one under existing law.