**Ronald KOWALSKI, Plaintiff,**

**v.**

**WISCONSIN STEEL WORKS OF INTERNATIONAL HARVESTER CO., Progressive Steel Workers Union and George Jungkunz, Defendants.**

**No. 76 C 2163.**

United States District Court,
N. D. Illinois, E. D.

June 29, 1977.

S. David Friedlander, Calumet City, Ill., for plaintiff.

Raymond J. Kelly, William R. Sullivan, Seyfarth, Shaw, Fairweath & Geraldson, Chicago, Ill., for employe & foreman.

Henry C. Szesny, Jr., Chicago, Ill., for union.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

McMILLEN, District Judge.

This is an action brought by an ex-employee (Ronald Kowalski) against his former employer, its foreman, and the collective bargaining agent (the Progressive Steel Workers Union). Plaintiff alleges that his discharge on August 21, 1975 violated Article 15, §§ 1 and 4 of the collective bargaining agreement in that it was accomplished without good cause or a statement of reasons. He sues pursuant to § 301(a) of the Labor-Management Relations Act (29 U.S.C. § 185(a)).

The defendants have filed motions for summary judgment supported by various evidentiary materials. After careful examination of these materials and plaintiff's response thereto, we conclude that there is no genuine issue of material fact and that judgment should be entered for all defendants.

Article 17 of the collective bargaining agreement contains a grievance procedure which is intended to provide the exclusive and final remedy for breach of contract. The union filed a grievance for plaintiff concerning his discharge and processed it through Step 4 of the procedure. Following the Step 4 conference with management, the union's Board of Adjustment decided not to take plaintiff's case to arbitration, the final step of the process.

Ordinarily, an employee is bound by the result reached through the contractual grievance mechanism. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). A union has no unqualified obligation to carry all grievances of its members to the ultimate level and has a fiduciary duty to its other members not to dispense its efforts and assets without good cause. However, if a member can show that his bargaining agent, the union, arbitrarily, discriminatorily or in bad faith refused to

process his grievance beyond a certain point, he may litigate his underlying contract claim under § 301(a). *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ In order to prove that the union has breached its duty of fair representation, plaintiff must first establish that he has exhausted those remedies available to him within the union. *Newgent v. Modine Mfg. Co.,* 495 F.2d 919 (7th Cir. 1974); *Bradley v. Ford Motor Co.,* 417 F.Supp. 23 (N.D.Ill. 1975). Only then may he attempt to show that there is "substantial evidence of fraud, deceitful action or dishonest conduct [on the part of the union]" in handling his grievance. *Humphrey v. Moore, supra* p. 315, 375 U.S. at 348, 84 S.Ct. at 371; *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290 (7th Cir. 1975).

## A. EXHAUSTION OF INTRA–UNION REMEDIES

Article 12, § 5 of the union's constitution provides that a member may appeal any decision of the Board of Adjustment to the union's Board of Delegates. To effect an appeal, the member need only contact his union delegate or a union officer and express his wish to obtain review of the Board of Adjustment's decision, (p. 63–64 of Plesha deposition).

The union's decision not to take plaintiff's grievance to arbitration was made at a meeting of its Board of Adjustment on February 5, 1976, (Ex. 6 to Plesha deposition). Neither plaintiff nor his attorney attended the meeting, although entitled to do so. (P. 88 of Kowalski deposition; p. 65–66, 70, 75–77 of Plesha deposition). Plaintiff himself testified that he never expressed a desire to appeal this determination, (p. 103–106 of Kowalski deposition). The absence of any demand for appeal was corroborated by union vice-president Steve Plesha, (p. 64–65 of Plesha deposition).

■ Plaintiff points out that, under Article 17, § 4(1) of the collective bargaining agreement, the union is required to file a written notice of its intention to arbitrate within sixty (60) days of the receipt of an answer to the grievance at Step 4 of the process. Because the Board of Adjustment meeting took place a few days more than sixty days after the Step 4 conference with the employer, plaintiff maintains that the union effectively waived its right to arbitrate under the contract and therefore that his failure to attend the Board of Adjustment meeting and appeal its decision to the Board of Delegates are meaningless. This is incorrect, since plaintiff could have appealed the issue of waiver to the Board of Delegates. Furthermore, Article 17, § 4(1) on its face allows the company to extend this deadline, and plaintiff had this informal remedy available to him. Union vice-president Plesha testified that the union had been able to obtain such an extension in the past and there was nothing to indicate that plaintiff's request would have been futile. (Plesha deposition, p. 41–42, 66–67).

■ Plaintiff also seeks to excuse his failure to appeal to the Board of Delegates by claiming ignorance of the appeal procedures. However, he had retained an attorney (not the one who filed this suit) and had given him a copy of the union constitution and by-laws, (p. 86–87 of Kowalski deposition). Moreover, our Circuit has held that a member of the union, a voluntary association, has a duty to know his intra-union remedies. *Newgent v. Modine Mfg. Co., supra* p. 316.

We conclude that plaintiff did not exhaust the remedies available to him within the union prior to filing this lawsuit. As a result, the *Newgent* decision prevents him from litigating the bad faith of his union in this court.

## B. THE UNION'S DUTY OF FAIR REPRESENTATION

■ Alternatively, the record proves beyond a genuine issue of fact that the union fully investigated plaintiff's grievance and took a reasonable course of action designed to eventually obtain his re-employment, but that its plan failed due to plaintiff's own lack of cooperation. The decision not to take plaintiff's grievance to arbitration was clearly not arbitrary or made in bad faith.

Plaintiff had an extensive disciplinary record between 1970 and 1975, and apparently had difficulty getting along with his fellow workers, (Plesha deposition p. 17, 30–33, and Ex. 10 thereto). The union had worked with plaintiff in resolving these prior problems. (Plesha deposition p. 18, 80–81; Kowalski deposition p. 109). As a result of his poor work record, plaintiff was warned not only by management but also by the union that he was liable to face discharge if future infractions occurred, (Plesha deposition p. 18, 68–69, 80–81). The foregoing facts are undisputed.

Despite these warnings, plaintiff was accused by foreman Jungkunz of not following instructions in the performance of his job (Ex. 3 to Plesha deposition; and Jungkunz deposition generally). One of plaintiff's fellow workers, Harvey Granberry, allegedly complained to the foreman two or three times concerning plaintiff's poor job performance prior to his dismissal. (Plesha deposition p. 29–33, 83–85, Ex. 12 thereto; Kowalski deposition p. 57). Walter Kuchta, the union delegate, investigated this charge and concluded that it was essentially accurate, (Plesha deposition p. 10–13, 17, 29–33, 83–85).

The union processed plaintiff's grievance through Step 4 of the procedure, challenging both the discharge decision itself and the severity of the sanction imposed. Although the company was unwilling to take plaintiff back unconditionally, it did express an interest at the Step 4 meeting in reconsidering his status at a future date if he could work out some of the attitudinal problems which contributed to his poor work record, (Exs. 5 and 7 to Plesha deposition). The union had discussed the possibility of counselling with the plaintiff, his attorney and his family prior to the Step 4 conference and again discussed it after the meeting as the only way in which plaintiff might be able to get his job back, (Plesha deposition p. 13–14, 25, 73–74, 79, 90–92; Kowalski deposition p. 72–76, 85–87). Although plaintiff initially agreed to participate in the counselling program and was referred first to a Model Cities counsellor and then to a doctor with the Chicago Board of Health, he eventually refused to continue with these sessions, (Plesha deposition p. 13–14, 25–28, 35–36; Kowalski deposition p. 88–95, 98, 102, and Ex. 6 thereto).

■ Because of plaintiff's extensive disciplinary record, the strong case the company had with respect to the incident which provoked the discharge, the bad precedent which an arbitrator's decision on these facts might create, and plaintiff's failure to cooperate in the counselling program, the union reasonably decided not to take the grievance to arbitration, (Plesha deposition p. 35, 67, 77–92 and Ex. 6 thereto). We recognize that this decision involved a matter of judgment which we are not empowered to review under § 301 since plaintiff has failed to present evidence of fraud, bad faith or arbitrariness.

Since the union did not breach the duty of fair representation which it owed to plaintiff, the matter in controversy did not ever reach the employer. Therefore, judgment must be entered not only for the union, but also for the defendant employer and its foreman. *Vaca v. Sipes, supra* p. 316; *Cannon v. Consolidated Freightways Corp., supra* p. 316.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendants' motions for summary judgment are granted and judgment is entered on the complaint in their behalf, with costs.