Carl JOHNSON, Plaintiff-Appellant,

v.

GENERAL MOTORS, a Delaware Corp., International Union, United Autoworkers (UAW) Local Union 424, jointly and severally, Defendants-Appellees.

No. 91, Docket 80–7077.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1980.

Decided Feb. 18, 1981.

Franklin Moss, New York City, for plaintiff-appellant.

John A. Fillion, Gen. Counsel, Ralph O. Jones, Asst. Gen. Counsel, Detroit, Mich., Richard Lipsitz, Buffalo, N. Y. (Frank S. Kedzielawa, Buffalo, N. Y., of counsel), for defendant-appellee, UAW.

Raichle, Banning, Weiss & Halpern, Buffalo, N. Y. (Arnold Weiss, Buffalo, N. Y., of counsel), for defendant-appellee General Motors Corp.

Joseph F. Gervase, Jr., Buffalo, N. Y., for defendant-appellee Local Union 424.

Before KAUFMAN, KEARSE and BRIGHT,* Circuit Judges.

BRIGHT, Circuit Judge:

Carl Johnson brought this wrongful discharge action against his employer, General Motors Corporation (GM), under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976). Johnson also filed suit against the International Union, United Autoworkers (UAW), and its local union, Local 424 (Local), claiming that the unions breached their duty of fair representation in failing to arbitrate Johnson's wrongful discharge grievance against his employer. The district court entered summary judgment dismissing the action against all defendants on the ground that Johnson's failure to exhaust his internal union remedies precluded his bringing suit in district court. We reverse the dismissal as to all three defendants and remand for further proceedings.

---

*Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I. Background.

For purposes of this appeal, we consider as true the factual allegations in the complaint as supplemented by the affidavits filed by the parties.

This lawsuit arises out of a dispute between Carl Johnson, an employee of GM, and his foreman at GM's Chevrolet Delavan Plant in Buffalo, New York, on June 17, 1976. The foreman alleged that Johnson threatened him following a disagreement over production-line work. Johnson denied the accusation, but GM fired him because of the incident.

Johnson then filed a grievance, which the Union processed through the first three steps of the grievance procedure set forth in the collective bargaining agreement: step 1—attempted adjustment of grievance at the shop level; step 2—appeal by the local union shop committeeman to the plant labor relations board; and step 3 (in which the International Union assumes representation of the union member)—appeal to a four-man appeals committee.

On January 24, 1977, the UAW appealed Johnson's grievance to an impartial umpire for binding arbitration as the fourth and final step of the grievance procedure. Sometime thereafter, however, the UAW withdrew the grievance before the umpire heard the appeal.

After the UAW withdrew the grievance, Johnson filed this suit. Johnson alleged that GM fired him in violation of the National Collective Bargaining Agreement and that the UAW and the Local breached their duty of fair representation in handling his grievance. Johnson maintained that the president and members of the Local, because of personal hostility towards Johnson, conspired with the International to deprive Johnson of his full grievance remedies.

The materials presented to the district court by the defendants in support of their motions for summary judgment focused solely on the question of exhaustion of internal union remedies. The affidavits set forth the intraunion procedures by which a union member may appeal from an adverse

decision of the Local or International. According to the affidavits, certain claims against union officials may be appealed to an independent Public Review Board (PRB). An employee can use this procedure, for example, when a union member alleges improper handling of a grievance due to fraud, discrimination, or improper collusion with management. The PRB may review claims of bad faith and can direct the union to pay any and all wages or benefits lost as a result of the wrongful withdrawal of a grievance.

Johnson's affidavit in opposition to the motion for summary judgment relies essentially on his lack of awareness of the available internal union procedures and on the local president's statement that "nothing more could be done for my grievance after it was removed from the arbitration schedule." Johnson's complaint, however, specifically alleged in paragraph 28 that

> Plaintiff has, in good faith, exhausted all reasonable grievance procedures available to him under the National Agreement, the Constitution of the International Union and the by-laws of the Local Union; and by reason of Defendant Unions' above mentioned hostility and discriminatory attitude toward the plaintiff as well as their connivance, collusion and conspiracy with Defendant Corporation regarding plaintiff's discharge, and further resort by plaintiff to additional intra-union grievance procedures would be futile.

Notwithstanding this allegation, the trial court assumed that "[p]laintiff does not claim that the [union constitutional remedies] are inadequate or that resort to them would have been futile." The trial court construed Johnson's complaint as contending only that "he should be excused from exhausting such remedies because he was unaware of them" and that "the president of Local 424 told [plaintiff] that nothing more could be done for [his] grievance after

it was removed from the arbitration schedule." [1] Holding that these allegations were insufficient to excuse exhaustion as a matter of law, the district court dismissed the complaint.

## II.  *Exhaustion Against the Union.*

As against the unions, Johnson argues on appeal that the district court erred in summarily dismissing for failure to exhaust intraunion remedies because the unions failed to apprise him of available remedies and, in fact, affirmatively misinformed him of his rights. He also argues that the constitutional provisions that may have afforded him relief were so ambiguous that he was denied any reasonable basis for relief. We believe Johnson's contentions create a significant dispute concerning the reasonableness of the available intraunion appellate remedies such that the grant of summary judgment was inappropriate. We therefore reverse and remand for further proceedings.

■ A court may require an employee to exhaust intraunion remedies prior to bringing suit against his union. This requirement, however, is not absolute; rather, it is discretionary with the court. *NLRB v. Industrial Union of Marine & Shipbuilding Workers (Marine Workers)*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (1968); *Clayton v. ITT Gilfillan*, 623 F.2d 563, 566 (9th Cir.), *cert. granted*, —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980); *Geddes v. Chrysler Corp.*, 608 F.2d 261, 264 (6th Cir. 1979); *Baldini v. Local 1095, UAW*, 581 F.2d 145, 148–49 (7th Cir. 1978); *Chambers v. Local 639, IBT*, 578 F.2d 375, 385 (D.C.Cir.1978); *Buzzard v. Local Lodge 1040*, 480 F.2d 35, 41 (9th Cir. 1973); *Neal v. System Board of Adjustment*, 348 F.2d 722, 726 (8th Cir. 1965).

■ The court, however, must exercise its discretion in light of Congress' concern

---

**1.** Although Johnson did not reiterate his challenge to the adequacy or futility of the intraunion remedies in his affidavit, he challenged the reasonableness of the union remedies in his complaint and through his assertion that the union failed to inform, and misinformed, him of

the existence of postgrievance, intraunion remedies. Thus, this court must determine whether, upon the record before us, the defendants established the reasonableness of requiring exhaustion sufficiently to justify a grant of summary judgment.

over preserving the right of union members to sue over violations of their rights. Section 101(a)(4) of the Labor Management Reporting and Disclosure Act (LMRDA) provides:

> (4) *Protection of the right to sue.*—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding * * * *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * *. [29 U.S.C. § 411(a)(4) (1976).]

Except to the extent permitted by the final proviso, therefore, Congress prohibits unions from interfering with their members' right to bring suit. This proviso has been construed, not as an extension of authority to unions to police their members, but as

> a statement of policy that the public tribunals whose aid is invoked *may in their discretion* stay their hands for four months, while the aggrieved person seeks relief within the union. [*NLRB v. Marine Workers, supra*, 391 U.S. at 426, 88 S.Ct. at 1722 (emphasis added).]

This court stated in *Giordani v. Upholsterers International Union*, 403 F.2d 85 (2d Cir. 1968):

> It is now beyond question that the statutory exhaustion requirement does not give the union authority to compel its members to pursue internal remedies before resorting to the courts, but rather preserves the discretionary exhaustion doctrine as it had been judicially developed, subject to the four-month limitation. [*Id.* at 88.]

In *Detroy v. American Guild of Variety Artists*, 286 F.2d 75 (2d Cir.), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), Chief Judge Lumbard discussed the exhaustion doctrine in the context of a member's suit against his union for alleged violation of procedural rights granted union members under the LMRDA:

> Taking due account of the declared policy favoring self-regulation by unions, we nonetheless hold that where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, the violation of federal law clear and undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award, exhaustion of union remedies ought not to be required. [*Id.* at 81.]

*See also Cammarata v. Ice Cream Drivers and Employees Union, Local 757*, 441 F.Supp. 696, 701 (E.D.N.Y.1977), *aff'd mem.*, 591 F.2d 1329 (2d Cir. 1978).

A court in deciding whether to apply the exhaustion doctrine must determine "whether the available procedures are adequate and reasonable in light of the facts of the particular case. *NLRB v. Marine Workers*, 391 U.S. 418, 428, 88 S.Ct. 1717, 1723, 20 L.Ed.2d 706." *Geddes v. Chrysler Corp., supra*, 608 F.2d at 264. The district court must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs. If intraunion remedies do not provide a reasonable and adequate opportunity for full relief, or if resort to them would be futile, exhaustion should not be required.

We believe that the burden of establishing entitlement to the exhaustion defense lies with the Union. The intraunion appellate procedures available to a disgruntled employee were drafted and implemented by the Union. As a result, the Union is in a better position than the employee to inform the court of the efficacy and fairness of these appellate remedies. Therefore, the Union must bear the burden of proving that its appellate procedures can be administered in a sufficiently unbiased manner to guarantee that the employee's resort to them would not be futile. Adequacy of these procedures must be demonstrated by showing that the disgruntled employee can be fully redressed for his injuries

resulting from the Union's alleged breach of the duty of fair representation. Finally, the Union must prove that its procedures are reasonable, which can be demonstrated by showing that Union members have been informed of the availability of internal appellate remedies and that these procedures are not particularly cumbersome or confusing.[2] *See Orphan v. Furnco Construction Corp.*, 466 F.2d 795, 801–02 (7th Cir. 1972); *Cammarata v. Ice Cream Drivers and Employees Union, Local 757, supra*, 441 F.Supp. at 701; *Dorn v. Meyers Parking System*, 395 F.Supp. 779, 785–86 (E.D.Pa.1975).

▇▇▇ In light of federal policy expressed in section 101(a)(4) of the LMRDA, the unions must establish the reasonableness of the procedures specified by the union, including the likelihood that relief may be obtained within four months. The union may not prevent a claim from reaching litigation by providing for "endless stages of review." *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 312 (6th Cir. 1975). Complex intraunion processes that in truth serve to exhaust the union member and his resources cannot stand as a bar to the public processes that Congress affords to every union member. *See NLRB v. Marine Workers, supra*, 391 U.S. at 425, 88 S.Ct. at 1722; *Geddes v. Chrysler Corp., supra*, 608 F.2d at 264. Thus, in applying the exhaustion doctrine on a discretionary basis, trial courts must consider the reasonableness of the proposed remedy in addition to the oft-repeated standards of inadequacy or futility.

In this case, Johnson does not claim inadequacy or futility of the appeals procedure. Accordingly, we need consider only the reasonableness of the intraunion remedy in light of all the circumstances.

### III. *Reasonableness.*

Appellant describes the remedies suggested by the unions, e. g., appeals to a meeting of the local union, to the impartial PRB, and to the May 1977 convention of the UAW, as likely serving "to exhaust Johnson and dissuade him from seeking further redress, but * * * certainly [serving] no other function." We must, therefore, examine the intraunion remedies cited by the unions (articles 32 and 33 of the Union's Constitution) to determine their reasonableness in these circumstances.

Article 32 entitled "Public Review Board" provides in section 1 for an appeal procedure to the PRB for the purpose of insuring "high moral and ethical standards in the administrative and operative practices of the International Union and its subordinate bodies."[3]

Section 5 appears to be the operative section.[4] It provides, among other things,

2. Thus, we decline to follow the rule adopted by several courts that an employee faced with the union's exhaustion defense bears the burden of proving the futility and inadequacy of resorting to internal appellate remedies. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 855–56 (6th Cir. 1978); *Winter v. Local 639, IBT*, 569 F.2d 146, 149–50 (D.C.Cir.1977); *Imel v. Zohn Manufacturing Co.*, 481 F.2d 181, 184–85 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14*, 453 F.2d 1018, 1027 (9th Cir. 1972).

3. *Section 1.* For the purpose of insuring a continuation of high moral and ethical standards in the administrative and operative practices of the International Union and its subordinate bodies, and to further strengthen the democratic processes and appeal procedures within the Union as they affect the rights and privileges of individual members or subordinate bodies,

there shall be established a Public Review Board consisting of impartial persons of good public repute, not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies.

4. *Section 5.* To facilitate the orderly handling of complaints related to alleged violations of any UAW ethical practices codes, the following procedures shall apply:

(a) If a complaint is against the operation of a subordinate body or any officer or representative thereof, the complaint must be initiated by a member of that subordinate body who shall be obligated to first attempt to redress and seek correction of the matter complained of through appeal to the membership of the Local Union. Failing to get redress from the Local Union, the member shall submit his complaint to the International Executive Board through the International President who shall forward a copy of the

that, for violations of ethical practices by a subordinate body or officer, members must seek redress first through the local union, then by appeal to the International Executive Board through action initiated by the International president, and finally to the PRB. If the complaint is against the International, the complainant must secure approval from the Local before submission to the International for processing. An employee may bypass the Local and appeal directly to higher bodies, which, *in the exercise of their discretion*, may hear the complaint.

These provisions offer no guidance concerning the filing of joint complaints against the Local and the International, as in this case. Moreover, it is not clear that article 32 would apply to all aspects of a

violation of the duty of fair representation, because article 32 refers only to high moral and ethical standards.[5] Further, the PRB can exercise jurisdiction over unfair representation claims only if the member alleges bad faith, whereas a court's jurisdiction in such claims is not so limited.[6]

Article 33 sets forth an even more complex maze of appeals procedures for challenges to local union action.[7] According to certain affidavits submitted by the International, the member must first seek approval for appeal from the membership of his local union (unless this step is waived). He may then appeal to the International Executive Board and, in turn, to the Constitutional Convention Appeals Committee of the International Union or to the Public Review Board. (Sections 1–8.)[8] No provision ap-

complaint directly to the chairman of the Public Review Board. The International Executive Board shall have the initial responsibility for investigating the complaint. The chairman of the Public Review Board will be kept advised of the case by the International Executive Board. Upon completion of the International Executive Board's investigation and action, the chairman of the Public Review Board and the complaining member will be informed as to the disposition made of the case by the International Executive Board. In the event the complaining member is dissatisfied with the decision and action of the International Executive Board, he may, within thirty (30) days, appeal such decision to the Public Review Board. In the absence of such an appeal, the Public Review Board may act on the matter if it concludes that there is substance to the original complaint and that the action of the International Executive Board does not satisfactorily meet the problem.

(b) If a complaint is against the operation of the International Union or any officer or representative thereof, the complaint must be made by a member of a Local Union and approved by membership action of that Local Union. The complaint and a certification of the approval shall be submitted to the International President who shall forward a copy of the complaint directly to the chairman of the Public Review Board. The complaint shall be processed by the International Executive Board and the Public Review Board in the same manner as a complaint under (a) above.

(c) However, if any member files a complaint under either Sections (a) or (b) above but does not seek approval, redress or action from his Local Union, he shall set forth the

reasons for his failure to seek or obtain such approval, redress or action from his Local Union at the time he files his complaint with either the International Executive Board or the Public Review Board. When, in the judgment of the International Executive Board and/or the Public Review Board there are valid and substantial reasons for the request to bypass the Local step, the matter may be processed without compliance with the Local step.

(d) Any matter within the coverage of this Section may be submitted to the Public Review Board by majority action of the International Executive Board.

When a complaint is properly before the Public Review Board, the Public Review Board shall assume jurisdiction over the matter complained of and process the matter in accordance with the provisions of subsequent Sections of this Article.

5. The full provisions of article 32 consist of over 1,600 words, much of the verbiage applicable to complaints seeking redress through the PRB.

6. Fox & Sonenthal, *Section 301 and Exhaustion of Intra-Union Appeals: A Misbegotten Marriage,* 128 U.Pa.L.Rev. 989, 1008 (1980).

7. Article 33 consists of approximately 2,300 words of textual material.

8. The president of the Local Union, in his affidavit, states that a member has three alternative appeals: directly to the Public Review Board; to a meeting of the local unions; or to the Convention of the UAW. This inconsistent description indicates the confusion surrounding

pears in article 33 relating to a challenge to alleged wrongful conduct of the International, either alone or in conjunction with the Local.

Given the complexity of the UAW procedures, we cannot accept the conclusion that the procedures are reasonable as a matter of law. The Unions have presented no documentation in the record or in the cases cited, upon which the reasonableness of the procedures can be assumed. According to commentary on the subject, only one appeal to the Public Review Board in its twenty-year history has resulted in a finding that the union breached its duty of fair representation. *See* Fox & Sonenthal, *Section 301 and Exhaustion of Intra-Union Appeals: A Misbegotten Marriage*, 128 U.Pa. L.Rev. 989, 1008 n.75 (1980).

Moreover, on the record before us, we see no basis for believing that a typical rank and file union member could understand and follow the procedures necessary to pursue the intraunion appellate remedies, especially considering the procedural intricacies contained in articles 32 and 33 of the UAW Constitution.[9] Here, in particular, because Johnson alleges that he received no information on the available remedies and that the Union president, in effect, rejected Johnson's request for assistance and led him to believe that internal appeals were exhausted, a trial court cannot merely assume that the unions have offered him and his fellow union members a reasonable intraunion remedy to contest allegedly improper action by leadership of the Local or the International. Indeed, our review of these complex constitutional procedures convinces us that a union member would need considerable expert assistance either from his union or from some other source to work his way through this maze of union procedures.

The district court, in applying the exhaustion defense to Johnson as the basis for dismissing the lawsuit, relied on *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919 (7th Cir. 1974). There, under similar circumstances, the court dismissed the union member's claim for failure to exhaust intraunion remedies. The district court cited the following argument from the *Newgent* case:

"By becoming a member of the Union Newgent was contractually obligated to exhaust union remedies before resorting to a court action. * * * Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. Newgent was not 'justified in remaining in ignorance of the provisions governing his own union or, in fact, relying on a statement by an officer that there was nothing he could do'. " *Id.*, at 927–28. [Dist.Ct. op. at 4.]

We do not agree. The union changes roles in a case of this kind. From the representative of the plaintiff under the collective bargaining agreement, the union becomes the plaintiff's opponent in defending its right to terminate a grievance. Thus, when the union member seeks relief through intraunion procedures, the Local and the UAW will likely be in a posture adverse to their member. Under such circumstances, a duty ought to rest upon the union to inform its members of available internal remedies. *See Geddes v. Chrysler Corp.*, *supra*, 608 F.2d at 264; *Detroy v. American Guild of Variety Artists*, *supra*, 286 F.2d at 81; *Cammarata v. Ice Cream Drivers & Employees Union, Local 757*, *supra*, 441 F.Supp. at 701. The nature and extent of information disseminated by the International and Local unions to its members, as compared to the complexity of the remedies, bears on the court's determination of the reasonableness of the intraunion remedy.

Although other courts have found the UAW procedures adequate, they did not address the question of reasonableness. *See, e. g., Clayton v. ITT Gilfillan*, *supra*, 623 F.2d at 566; *Baldini v. Local No. 1095, UAW*, *supra*, 581 F.2d at 149; *Reid v. UAW, Local 1093*, 80 L.R.R.M. 2886, 2892

---

the available internal union remedies. Even those in official union positions seem unsure of the correct path of appeal.

9. *See* Fox & Sonenthal, *supra* note 6, at 1031.

(N.D.Okla.1972). These decisions, moreover, relied either on conclusory affidavits or on opinions that accepted without analysis a finding of adequacy. The Union's burden of showing reasonableness cannot rest on such assumptions.[10]

▪ The exhaustion defense to a union member's suit for failure of the Union to provide fair representation may not be successfully asserted unless the unions establish that the intraunion remedies are in fact (1) adequate, (2) not futile, and (3) reasonable under the circumstances. Here, the Union failed to establish the reasonableness of the exhaustion defense and Johnson at least raises an issue of fact on the reasonableness of applying the exhaustion defense against the Local and UAW. Accordingly, the entry of a summary judgment of dismissal against the Union must be reversed and the case remanded to the district court for a determination of the reasonableness of the Union's appellate procedures in this situation.[11]

IV. *The Company's Exhaustion Defense.* [12]

▪ The district court also granted summary judgment in favor of GM on the basis that Johnson failed to exhaust intraunion remedies, although the court apparently did not consider exhaustion in a suit against the employer as a separate issue.[13] *A fortiori,* the failure of the exhaustion defense against the unions requires that we order reinstatement of the complaint against the employer. However, because the district court may later dismiss against the unions, we must consider GM's assertion of the exhaustion defense as a distinct question. On this issue, we hold that the failure to exhaust these remedies can never constitute a defense to a breach of contract suit against the employer. We therefore reverse the dismissal of the breach of contract case against GM.

When an employee can successfully prove that the union breached its duty of fair representation, as he must in a suit for breach of a collective bargaining agreement, the employer cannot rely on the employee's failure to exhaust intraunion remedies as a defense. In our judgment, the reasoning supporting dismissal of a suit against a union when a member fails to exhaust intraunion remedies has no bearing in a section 301 suit against an employer.

---

**10.** Timeliness may also bear on the reasonableness of the intraunion remedy, that is, whether a union member may obtain relief within a reasonable time if forced to make successive appeals through the organizational hierarchy and to the PRB. Fox and Sonenthal suggest that exhaustion of intraunion procedures might take years. Fox & Sonenthal, *supra* note 6, at 997–98.

We also note that in at least one case brought to our attention on this appeal, the internal procedure took nearly two years to provide relief. *UAW v. General Motors Corp.,* Appeal Case P–737, at p. 4 (Sept. 4, 1980) (Stark, Umpire). We do not reach the timeliness of the UAW remedy because Johnson did not raise the issue.

**11.** The district court on remand may hold a hearing to determine the reasonableness of the intraunion remedy. Should the court find the procedures reasonable, it may dismiss the action. If, on the other hand, the court finds that *the union fails to establish the reasonableness* of the internal appellate remedy, the court must proceed with the merits of the unfair representation claim.

**12.** GM's motion to dismiss, which the district court treated as a motion for summary judgment, asserted that the complaint failed to state a claim on which relief could be granted; that the court lacked jurisdiction over the subject matter; that plaintiff failed to exhaust his administrative and internal union and International Union remedies; and that the claim did not accrue within the time limited by law. The district court decided only the issue of failure to exhaust intraunion remedies.

**13.** The district court relied on a number of cases for its decision:

Baldini v. Local U. No. 1095, Intern. U., Etc., 581 F.2d 145 (7th Cir. 1978); Battle v. Clark Equipment Co., 579 F.2d 1338 (7th Cir. 1978); Kowalski v. Wisconsin Steel Works, Etc., 443 F.Supp. 314 (E.D.Ill.1977); Brookins v. Chrysler Corporation Dodge Main Division, 381 F.Supp. 563 (E.D.Mich.1974). But, see, Retana v. Apartment Motel, Hotel & El. Op. U. Loc. No. 14, 453 F.2d 1018 (9th Cir. 1972); Dorn v. Meyers Parking System, 395 F.Supp. 779 (E.D.Pa.1975).

Only *Brookins* and *Kowalski* actually held that an employer could successfully assert the exhaustion defense.

Courts justify the exhaustion requirement because of the contractual relationship between a union and its members.

> The exhaustion requirement is based primarily on a contractual obligation to exhaust internal union remedies, assumed by the member upon his joining the union and embodied in the union's constitution and regulations. [*Harrison v. Chrysler Corp.*, 558 F.2d 1273, 1277–78 (7th Cir. 1977).]

The employer, however, "has no interest in the agreement and has no right to rely on its provisions in seeking dismissal of a claim against the employer. *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182 (10th Cir. 1978)." *Geddes v. Chrysler Corp., supra*, 608 F.2d at 264. *See Winter v. Local 639, IBT*, 569 F.2d 146, 150 (D.C.Cir.1977); *Harrison v. Chrysler Corp., supra*, 558 F.2d at 1278 (employer cannot assert interests belonging exclusively to third party); *Orphan v. Furnco Construction Corp., supra*, 466 F.2d at 800–01; *Petersen v. Rath Packing Co.*, 461 F.2d 312, 315 (8th Cir. 1972).

Furthermore, the policy underlying legislative and judicial deference to internal remedies has no relevance in a suit against an employer. Congress and the courts prefer exhaustion to forestall unnecessary judicial interference in internal union affairs. *See, e. g., Clayton v. ITT Gilfillan, supra*, 623 F.2d at 566, *cert. granted*, —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980); *Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1346 n. 10 (7th Cir. 1978); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 104 (3d Cir. 1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). There is no such internal relationship to protect between the employee and the employer. Only one circuit court case has ever permitted an employer to successfully raise the exhaustion of intraunion remedies defense in an employee's action for breach of the collective bargaining agreement. *Varra v. Dillon Companies, Inc.*, 615 F.2d 1315, 1317–18 (10th Cir. 1980). Because of considerations previously mentioned or for other reasons, other courts of appeals have rejected the exhaustion defense asserted by the employer. *See, e. g., Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 184 (10th Cir. 1978); *Battle v. Clark Equipment Co., supra*, 579 F.2d at 1346; *Winter v. Local 639, IBT, supra*, 569 F.2d at 150–51; *Petersen v. Rath Packing Co., supra*, 461 F.2d at 315.

In *Varra*, the Tenth Circuit held that an employee must exhaust intraunion remedies in a suit against an employer if those remedies could result in a reinstatement of the withdrawn grievance. *Varra v. Dillon Companies, Inc., supra*, 615 F.2d at 1317–18. That court believed that the policy of settling labor disputes without involvement of the courts outweighs any disadvantage to the employee. The court in *Varra* relied on statements in cases from the Seventh Circuit, which indicate in dictum [14] that an employer may assert such a defense in limited circumstances:

> The employer may properly assert that the employee has an obligation under the collective bargaining agreement to resort to intraunion appellate procedures for this limited purpose [as a method by which fair representation may be regained and the grievance procedure revised]. To raise this defense, however, the employer must establish that an intraunion appeal could result in reversal of the union's refusal to press the grievance and that the grievance could be reinstated in accordance with the provisions of the collective bargaining agreement. [*Harrison v. Chrysler Corp., supra*, 558 F.2d at 1279.]

*Accord, Baldini v. Local 1095, UAW, supra*, 581 F.2d at 150 (7th Cir.) (dictum).[15] In each of these cases, however, the courts did not dismiss the employee's claim against the union.

The requirement that an employee must exhaust intraunion remedies in a suit against an employer seems inconsistent

---

**14.** *See Miller v. Gateway Transportation Co.*, 616 F.2d 272, 275 & n.3 (7th Cir. 1980) (question remains open in circuit).

**15.** The Ninth Circuit, also in dictum, indicated that it agrees with this approach. *Clayton v. ITT Gilfillan, supra*, 623 F.2d at 568–69.

with the national labor policy as developed in a series of Supreme Court cases. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). *See also Steinman v. Spector Freight System, Inc.*, 441 F.2d 599 (2d Cir. 1971). These cases are relevant, although concerned with the exhaustion of contract remedies as distinguished from the exhaustion of internal union remedies. The exhaustion doctrine, derived from *Republic Steel* and modified by later cases, holds

> that an employee could not sidestep the grievance machinery provided in the contract and that unless he attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). [*Hines v. Anchor Motor Freight, Inc., supra*, 424 U.S. at 563, 96 S.Ct. at 1055.]

*See also Vaca v. Sipes, supra*, 386 U.S. at 184, 87 S.Ct. at 913.

Under the case law, however, there exists an important exception to the requirement that the employee exhaust his contractual remedies. An employee may escape a defense based on his failure to exhaust, as well as avoid the exclusive nature of the contract remedies, "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes, supra*, 386 U.S. at 186, 87 S.Ct. at 914. *Accord, Clayton v. ITT Gilfillan, supra*, 623 F.2d at 568.

These cases establish a means of resolving the tension between the policy of noninterference with labor matters and the right

of employees to bring suit for breach of contract under section 301. Once a breach of the duty of fair representation occurs, the employee is free to ignore the private procedures dictated by the collective bargaining agreement and proceed in court. At that point, private resolution of disputes must give way to public vindication of employees' rights in court. As the Court stated in *Hines*:

> [W]e cannot believe that Congress intended to foreclose the employee from his § 301 remedy otherwise available against the employer if the contractual processes have been seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct. [424 U.S. at 570, 96 S.Ct. at 1059.]

*See also Steinman v. Spector Freight System, Inc., supra*, 441 F.2d at 603.

This means of resolution applies with equal, or greater, force when the private remedies under the collective bargaining agreements have been exhausted and only indirect intraunion procedures remain. If the law does not require Johnson to exhaust his contractual remedies before bringing suit against his employer, the law should not, under similar circumstances, require him to exhaust his intraunion remedies.[16]

For similar reasons, this court rejects the rationale of *Brookins v. Chrysler Corp., Dodge Main Division*, 381 F.Supp. 563 (E.D. Mich.1974).[17] In *Brookins*, the union (UAW) withdrew an employee's appeal before the grievance reached the final step of arbitration. The employee subsequently sued his employer for breach of contract and his unions (local and international) for breach of their duty of fair representation. Because the plaintiff failed to pursue his intraunion remedies, the district court dis-

---

**16.** We also note that, in this case, dismissal of the action against the employer may bar Johnson's ability to obtain any judicial relief because of time limitations—a defense that GM already asserts—if the Union rejects his appeal and does not reinstate the grievance.

**17.** *Accord, Fleming v. Chrysler Corp.*, 416 F.Supp. 1258, 1266–67 (E.D.Mich.1975), *aff'd*,

575 F.2d 1187 (6th Cir. 1978). Other district courts have reached the same result for less persuasive reasons. *See Kowalski v. Wisconsin Steel Works of International Harvester Co.*, 433 F.Supp. 314, 316 (N.D.Ill.1977); *Harrington v. Chrysler Corp.*, 303 F.Supp. 495, 497 (E.D. Mich.1969).

missed the action against the unions. The court also granted summary judgment for the employer, holding that in this case the employer could successfully assert exhaustion of internal union remedies on its own behalf. The *Brookins* court reasoned that until the plaintiff exhausted his internal remedies, the union could never be held liable for a breach of a duty of fair representation, in the absence of which the employer could not be subject to a court suit.

The Seventh Circuit considered and rejected a theory similar to that advanced in *Brookins.* The court reasoned that

> failure to exhaust such remedies is a defense available to the union because of considerations unrelated to the question of whether a wrong has been committed by it. [*Harrison v. Chrysler Corp., supra,* 558 F.2d at 1277.]

Johnson alleged in his complaint that the union arbitrarily withdrew his grievance because of the personal hostility between Johnson and the Local Union president. The breach, if any, therefore, appears to have occurred when the union withdrew Johnson's grievance. Under the language of *Vaca* and *Hines,* Johnson could, after that point, disregard the tainted contractual remedies and proceed against the employer in a suit under section 301. GM, of course, may show that no breach of the duty of fair representation has occurred in defending against Johnson's breach of contract claim.[18]

## V. *Conclusion.*

For these reasons, we reverse the district court's grant of summary judgment against the International and Local. We separately hold that exhaustion may not be required in Johnson's suit against GM. We do not believe that national labor policies would be enhanced or the intent of Congress carried out by requiring a dismissal of the suit against the Company for Johnson's failure to exhaust intraunion appellate remedies.

Reversed and remanded for further proceedings consistent with this opinion.

KEARSE, Circuit Judge, concurring in part and dissenting in part:

I concur in the reversal of the judgment appealed from insofar as it dismissed plaintiff's claim against the employer. I dissent, however, from the decision to reverse the dismissal of the claim that, in failing to pursue plaintiff's grievance further, the union failed to give plaintiff fair representation.

The Supreme Court has recognized that district courts may, within the bounds of their discretion, require that an aggrieved union member exhaust his intra-union remedies, unless such remedies are inadequate, before instituting suit against the union. *NLRB v. Marine Workers,* 391 U.S. 418, 426, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (1968). The imposition of such a requirement in the labor-management context is recognition of the policy against unnecessary judicial interference with union affairs. *See, e. g., Clayton v. ITT Gilfillan,* 623 F.2d 563, 566 (9th Cir.), *cert. granted,* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980); *Geddes v. Chrysler Corp.,* 608 F.2d 261, 264 (6th Cir. 1979). *See also* majority op., *ante,* at 1084. Whether interference is necessary or unnecessary is a matter to be decided by the court in the context of a given case. "The requirement of exhaus-

---

**18.** Appellees advance an alternative theory to support their claim that in this case the court could require Johnson to exhaust internal union appeals before going forward with his suit against his employer, General Motors. They argue that the Reinstatement of Grievance Agreement between GM and the International, which allows withdrawn grievances to be reactivated, transformed the internal appeals procedure into part of the bargained-for, contract grievance mechanism. As such, an employee must exhaust the scheme before bringing suit for breach of contract. *See Republic Steel*

*Corp. v. Maddox, supra,* 379 U.S. at 652, 85 S.Ct. at 616. However, as previously discussed, an employer may not successfully assert failure to exhaust contractual remedies as a defense in a breach of contract case if the plaintiff successfully proves that the grievance procedure was flawed. Therefore, if Johnson proves the union's breach of the duty of fair representation, then his failure to exhaust these remedies to the extent they were part of collective bargaining agreement cannot serve as the basis for dismissal.

tion is a matter within the sound discretion of the courts." *NLRB v. Marine Workers, supra,* 391 U.S. at 426 n.8, 88 S.Ct. at 1722 n.8. This Circuit has followed this principle, recognizing that the discretion of the district court should be exercised with particular reference to the facts of the case before it. *Giordani v. Upholsterers International Union,* 403 F.2d 85, 88 (2d Cir. 1968); *Detroy v. American Guild of Variety Artists,* 286 F.2d 75, 78 (2d Cir.), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

In the present case the union's constitution permits a member to appeal the decision of local union officials not to pursue a grievance; plaintiff concededly had not pursued these remedies. Plaintiff contended that he should be excused from exhausting these intra-union remedies because he was unaware of them, the union not having advised him of such remedies or furnished him with a copy of the constitution, and because the local union president had told him that nothing more could be done for his grievance. The district court noted, however, that plaintiff did not contend that the remedies provided were inadequate or that resort to them would have been futile.

The court found persuasive the reasoning of the Court of Appeals for the Seventh Circuit in *Newgent v. Modine Manufacturing Company,* 495 F.2d 919 (7th Cir. 1974), that, by joining the union, a member obligated himself to become aware of the nature and availability of his union remedies:

> Newgent was not "justified in remaining in ignorance of the provisions governing his own union or, in fact, relying on a statement by an officer that there was nothing he would do."

*Id.* at 928. The facts in the present case were remarkably similar, and "on these facts," the district court declined to excuse plaintiff's failure to exhaust his intra-union remedies. This appears to me to have been within the bounds of the court's discretion. I do not believe that these facts required the district court as a matter of law to excuse plaintiff's failure.

Accordingly, I would affirm the dismissal of the claim against the union.