**In re An Application to Enjoin the Ouster of Union membership between: Thomas C. PUMA, Petitioner,**

**and**

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 137, Respondent.**

**No. 94 Civ. 0786 (RLC).**

United States District Court, S.D. New York.

Sept. 7, 1994.

Horowitz & Pollack, P.C. (Steven B. Horowitz, Sanford E. Pollack, of counsel), South Orange, NJ, for petitioner.

Giblin & Lynch (Thomas J. Giblin, of counsel), Union, NJ, for respondent.

## OPINION

ROBERT L. CARTER, District Judge.

Petitioner Thomas C. Puma ("Puma"), owner of Ace Sign & Rigging, Corp. and an owner-member of respondent Sheet Metal Workers' International Association, Local Union # 137 (the "Union") seeks a preliminary injunction preventing his ouster from Union membership. He asserts that his petition states a claim cognizable under section 101(a)(1) of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1) (1985), and that jurisdiction is proper under section 102 of the LMRDA, 29 U.S.C. § 412 or alternatively under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1985). He also asserts federal question jurisdiction pursuant to 28 U.S.C. § 1337 (1993) and/or under the Declaratory Judgment Act, 28 U.S.C. 2201 and 2202 (1994). The Union moves pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., for dismissal of Puma's petition on the bases that: (1) the court lacks subject matter jurisdiction under any of the foregoing statutes; and (2) the petition fails to state a claim upon which relief may be granted. In the alternative, the Union argues that petitioner's request for a preliminary injunction should be denied because Puma has failed to establish any basis for granting such relief.

## I.

Thomas Puma, a principal and employee of Ace Sign & Rigging, Corp. ("Ace"), has been a member of Local 137 since 1970; first as an apprentice and journeyman, and more recently as an owner-member, his status having changed as per the terms of the Union's Constitution after becoming a principal of Ace. (See Pet.Exs. A & H.) On September 9, 1993, petitioner requested in writing that the Union convert his membership from owner-member to financial core member. Through its Financial Secretary/Treasurer, Paul Collins, the Union responded in a letter dated September 17, 1993, indicating that it was unclear as to petitioner's intent, but offering instead to issue him a withdrawal card. On November 5, 1993, petitioner's counsel wrote to the Union citing the case from which the term "financial core" member was derived, i.e. Communications Workers of America v. Beck, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988)[1], and offering to discuss the matter with the Union directly if it still had any questions. However on December 10, 1993, Collins responded directly to petitioner stating that the Union had no such classification as financial core member, and that it would treat petitioner's request to become this type of member as a voluntary withdrawal. Included with this letter were materials concerning petitioner's annuity fund and COBRA information. Subsequently, on December 13 and 17, 1993, petitioner's attorney wrote back to Collins stating that petitioner should not be dismissed from the Union for asserting his rights under Beck, and that the Union had made a "quantum leap" in suggesting that petitioner's request for a change in status amounted to a resignation of Union membership. Moreover, petitioner's counsel made clear to the Union that petitioner wished to remain as an owner-member during the pendency of the disagreement concerning his financial core membership. As of the date of the filing of the petition, the Union had not responded to this request.

On December 17, 1993, petitioner filed a charge with the National Labor Relations Board ("Board") alleging that respondent had violated its duty of fair representation by denying him financial core status pursuant to Beck and that it had improperly discharged

---

1. Where employees are required to become union members as a condition of continued employment, the membership may be whittled down to its "financial core" whereby such members would not be obligated to support union activi- ties beyond those germane to collective bargaining, contract administration and grievance adjustment. Beck, 487 U.S. at 745, 108 S.Ct. at 2648–49.

him in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 (1973). In a letter dated March 28, 1994, the Board refused to issue a complaint in this matter, finding that the evidence failed to establish that the Union violated sections 8(b)(1) and (2) of the NLRA, as amended, 29 U.S.C. §§ 158(b)(1) and (2), by failing to comply with the requirements of *Beck* or by improperly disciplining petitioner as alleged in the charge.

## II.

In support of its motion to dismiss under Rule 12(b)(1), F.R.Civ.P., the Union argues that the court lacks subject matter jurisdiction and that petitioner's claims are preempted by the NLRA because an unfair labor practice charge has been filed before the Board. In addition, the Union argues that Puma's petition should be dismissed because he fails to state a claim upon which relief may be granted.

■ As to the claim that the court lacks subject matter jurisdiction, the Union contends that petitioner, as the owner of Ace, does not have the same rights and protections as employee union members; that the absence of a collective bargaining agreement between Ace and Local 137 deprives the court of jurisdiction; and that petitioner has not alleged federal question jurisdiction pursuant to 28 U.S.C. §§ 1337 and 2202.

In arguing that petitioner does not have the same rights and protections of employee union members, the Union looks to section 101(a)(1) of the LMRDA, which provides the following:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). It then examines Article 16 § 1(d) of the Union's Constitution which states that:

An owner-member shall not be entitled to attend any meetings or be permitted to vote for election of local union officers or on any question pertaining to wages, hours, benefits, or other terms or conditions of employment or on the acceptance or rejection of a collective bargaining agreement, and further, shall not be permitted to serve in a representative capacity or hold an office or position in the local union.

Constitution and Ritual of the Sheet Metal Workers International Association and Affiliated Local Unions, State, District and Provincial Councils ("Union Constitution"), Art. 16, § 1(d)(2). [Pet. Ex. A] Comparing these two sections, the Union concludes that section 101(a)(1) cannot apply to both owner-members and employee members because the constitution's prohibition of owner-members from participating in elections and attending meetings is incompatible with section 101(a)(1)'s guarantee of this right for all union members. Thus, in order to reconcile this apparent contradiction, respondent simply asserts that owner-members are not really members of the Union and that section 101(a)(1) does not apply to them. Respondent further contends that under the Union Constitution, section 101(a)(1) of the LMRDA is not applicable to owners of companies because the owner-member classification is a voluntary affiliation—i.e. an owner may become a member if he wishes and complies with the rules.

In making its argument, respondent neglects to stress that the section 101(a)(1) guarantee of equal rights is "subject to reasonable rules and regulations in such organization's constitution and bylaws," and that § 1(d) of Article 16 of the Union's Constitution states that, "[a]n owner, employer ... shall be eligible to retain or apply for membership in this International Association, or any local union thereof, as an owner-member with the same rights and duties as other members except as provided below...." One of the exceptions following this section includes a rule prohibiting owner-members from participating in union elections; however there is no rule stating that owner-members are not covered by measures protecting

all members from improper disciplinary actions, including expulsion from the union. In fact, another section of the Union's Constitution specifically provides as follows:

> except as otherwise provided in this constitution, *after trial and conviction* of any of the offenses described in this article, any officer or member of this association may be disciplined by imposition of one or more of the following penalties: reprimand, fine, removal from office, suspension or expulsion from membership, or other appropriate disciplinary measures. (emphasis added)

Art. 17 § 1A Union Constitution. Thus, the absence of any rule excluding owner-members from this protection suggests that they, like employee-members, may not be subject to disciplinary action without due process.[2] Accordingly, respondent's argument that the petition must be dismissed because the LMRDA does not apply to petitioner is rejected.

Respondent next argues that dismissal is warranted on the grounds that petitioner failed to exhaust hearing procedures within the Union before bringing this action. Citing to section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), the Union points out that though any member has the right to institute an action in court, before bringing a suit a member "may be required to exhaust reasonable hearing procedures (but not to exceed a four month lapse of time) within such organization . . . ." Therefore, because petitioner did not first seek to resolve his grievance through intraunion procedures, the respondent maintains that the court cannot hear his case at this time.

■ Although a court may require a union member to exhaust internal remedies prior to bringing suit against his union, this requirement is not absolute; rather it is discretionary with the court. *Johnson v. General Motors*, 641 F.2d 1075, 1078 (2d Cir.1981). In deciding whether to apply the exhaustion doctrine, the court must balance the right of union members to institute suits against the policy of nonjudicial interference in union

affairs. *Id.* at 1078. Moreover it must consider "whether the available procedures are reasonable in light of the facts of the particular case." *Id., quoting NLRB v. Industrial Union of Marine and Shipbuilding Workers,* 391 U.S. 418, 428, 88 S.Ct. 1717, 1724, 20 L.Ed.2d 706 (1968). However the burden of establishing entitlement to the exhaustion defense lies with the union. *Id.*

■ In the instant case, respondent has failed to establish that it would have been reasonable for petitioner to utilize its internal procedures before bringing this suit. Indeed, it seems that petitioner's reliance on intraunion remedies would be futile at this point because the Union already has ousted him from his status as owner-member without even affording him the due process guarantees provided by its own constitution. Given these circumstances, respondent's request to dismiss Puma's petition on the grounds that he failed to exhaust internal remedies too must fail.

Similarly, the Union's contention that dismissal is warranted because petitioner, as the owner Ace, is prohibited from financing this action pursuant to section 101(a)(4), 29 U.S.C. 411(a)(4) is also unfounded. In his reply to the Union's allegation, petitioner makes it clear that Ace is not financing this action. As respondent Union has not offered any evidence to suggest the contrary, its contention must be rejected.

■ As an alternate argument, respondent contends that petitioner is not even afforded the protection of the LMRDA because he cannot retain membership in the Union. Under the Union's constitution, the following requirement must be satisfied in order for owner-members to retain membership:

> The sheet metal shop or business with which he is connected is in signed agreement with the local union or local unions having jurisdiction over the shop and the shop must employ at least one journeyman sheet metal worker who is a member of this Association and not in any way connected with the management thereof. . . .

---

**2.** Indeed, section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), specifically prohibits the disciplining of union members except for the nonpayment of dues or unless the member has had an opportunity to adequately prepare his defense and has been afforded a full hearing.

Union Constitution, Art. 16, § 1(d)(1). It is undisputed that Ace is not a signatory to a current collective bargaining agreement with the Union—its last contract having expired three years ago. (Puma Aff. ¶ 1 [Pet. Resp. Ex. C].) Thus, respondent argues that Puma cannot retain membership. Yet despite this circumstance respondent, at least up until this point, has treated petitioner as a union member. It has collected dues from him and contributions for his involvement in the health/welfare program as well as for pension and annuity funds. (See Pet.Resp. Ex. A.) Moreover, other Ace employees, presumably union members, have also been paying dues into the Union. To now say that petitioner is not a union member and that section 101(a)(1) does not apply to him after treating him as one for years, without more, is simply not sufficient at this point to dismiss his claim. See Am. Fed. of Television & Radio Artists v. Inner City Broadcasting Corp., 748 F.2d 884, 887 (2d Cir.1984) (when parties have agreed to substantive terms and conditions of a contract even when it has not been reduced to writing, they can nevertheless be bound by its terms); NLRB v. Haberman Const. Co., 618 F.2d 288 (5th Cir.1980) (though employer never formally adopted union contract, it's adoption was implied where employer manifested an intent to abide by the contract's provisions and enjoyed its benefits).

■ Lastly, respondent contends that Puma's petition should be dismissed because his claims are preempted by the NLRA. Although petitioner does not dispute the notion that the NLRA broadly preempts state and federal court jurisdiction over claims subject to the NLRA, he correctly points out that because the LMRDA is not embodied in the NLRA, the LMRDA provides a separate jurisdictional basis to the court pursuant to section 102. See, e.g., Eatz v. DME Unit of Local 3 etc., 973 F.2d 64, 69 (2d Cir.1992) (recognizing that Board's declination of jurisdiction does not impair the jurisdiction of a district court to adjudicate a claim for breach of a collective bargaining agreement under section 301 of the LMRA or a claim for violation of union democracy rights under section 102 of the LMRDA); see also Breininger v. Sheet Metal Workers Int'l Ass'n

Local Union 6, 493 U.S. 67, 74–77, 110 S.Ct. 424, 429–31, 107 L.Ed.2d 388 (1989) (upholding district court jurisdiction over an unfair representation claim despite Board's discretionary decision not to consider union's conduct actionable as an unfair labor practice). Thus, even though petitioner has brought his claim before the NLRB, the court can also entertain his petition pursuant to section 102 of the LMRDA.

Therefore, to the extent that petitioner has stated a cognizable claim under section 101(a) of the LMRDA, this court has jurisdiction pursuant to section 102. Accordingly, respondent's motion to dismiss the petition for lack of subject matter jurisdiction is denied, and inasmuch as the court has jurisdiction over petitioner's claims pursuant to 29 U.S.C. § 412, it need not address the alternative bases for jurisdiction asserted.

## III.

■ In addition to its contention that dismissal is warranted under Rule 12(b)(1), F.R.Civ.P., respondent maintains that petitioner's claims should be dismissed pursuant to Rule 12(b)(6), F.R.Civ.P., because he has failed to state a claim upon which relief may be granted. In considering a motion to dismiss under Rule 12(b)(6), F.R.Civ.P., the court must consider the legal sufficiency of the complaint, not the weight of evidence which might be offered at trial, and in order to prevail, the moving party must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court assumes the truth of the allegations set forth in the complaint and draws all inferences in favor of the pleader. See Karasyk v. Marc Commodities Corp., 770 F.Supp. 824, 829 (S.D.N.Y.1991) (Haight, J.) (citing cases).

Respondent maintains that because petitioner was not compelled to become a member of any union in order to obtain or retain employment, the protections guaranteed under Beck, which limit the fees collected from non-members to expenditures for collective bargaining activities, do not apply to him.

*See Beck,* 487 U.S. at 759–61, 108 S.Ct. at 2655–57 Petitioner, on the other hand, argues that regardless of whether or not *Beck* is controlling in this case, the gravamen of this cause of action is that the Union did not comply with section 101(a)(5) of the LMRDA which states as follows:

> SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for non payment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). Petitioner plainly articulates his belief that his "voluntary withdrawal" from the Union amounted to a violation of the LMRDA section above quoted. He maintains that the Union feared that he would be able to overcome a likely strike, by being able to get onto construction sites without facing fines or penalties for crossing the picket line, if he was able to change his status to a financial core member. Thus, in order to thwart Ace's ability to break a strike, the Union simply asserted that his request to change his status amounted to a voluntary withdrawal.

Without directly addressing petitioner's charges, respondent simply re-asserts its claim that because Ace is not in a signed agreement with the local union, petitioner cannot retain membership in it. However, as discussed above, the Union's convenient assertion that petitioner is not a member contradicts the fact that he has been treated as one up until now. Again, this claim, without more, is not sufficient to grant respondent's motion to dismiss, which therefore must be denied.

## IV.

In his petition, petitioner seeks a preliminary injunction enjoining respondent Union from ousting him from union membership. He claims that if he is dismissed from the Union he will be deprived of his livelihood in the event of a strike against Ace. Indeed, he asserts that the reason he sought to change his membership status to financial core member was to "avoid any repercussions from the Union such as fines or withdrawal of [his] union card, in light of the late August [strike] threat." (Pet. Reply at 10.) Because one must have a union card in order to get onto construction job sites, petitioner hoped that he would be able to work sites even in the event of a strike, while at the same time avoid Union fines and penalties.

In order to obtain injunctive relief, a party must demonstrate irreparable harm and "either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 74 (2d Cir.1985). Although petitioner argues that he will be irreparably harmed because he will lose his livelihood in the event of a strike against Ace, he not has provided any specifics to support this claim. Moreover, petitioner has not shown that there is a likelihood of success on the merits nor that the balance of hardships tips in his favor. Therefore, because petitioner has not demonstrated that he is entitled to injunctive relief, his request for a preliminary injunction must be denied.

### CONCLUSION

For all the foregoing reasons, respondent's motion to dismiss the petition pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., is denied, as is petitioner's motion for a preliminary injunction.

**IT IS SO ORDERED.**